[Crim. No. 5839. Fifth Dist. Jan. 31, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANCISCO CARREON, Defendant and Appellant.

562

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, David Y. Stanley and Gabriel C. Vivas, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Willard F. Jones, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOOLPERT, J.**—Located in the central area of California where many non-English-speaking people live, we are not surprised by the number of recent appeals which have raised questions concerning the right of a defendant in a criminal case to a personal, sworn interpreter. Oral argument in three such cases having just been concluded, we publish this opinion and use it by reference in the others.

It is not disputed that defendant's first language is Spanish and that his grasp of English is sufficiently limited to have required the services of an interpreter. ■ ■ ■ ■ A defense interpreter[1] was provided him at some, but not all, of the judicial proceedings. Of particular importance is the fact that at the preliminary examination, the appointed defense interpreter was borrowed to interpret witnesses' testimony for the court. The "Case of the Borrowed Interpreter" is a recurring problem which has already generated significant concern by two appellate courts of this state.

Generally, we agree with recent cases upholding the right to a personal defense interpreter throughout all phases of the criminal proceedings, without interruption, unless expressly waived on the record by the defendant after advice of the right. We differ in two important ways. First, the strict rule of *Boykin-Tahl* is inapplicable to this constitutional right. Second, we hold the failure to swear the defense interpreter is deemed waived unless brought to the attention of the court.

Defendant appeals from his conviction of robbery and simple kidnaping.

## FACTS

The defendant and three other men allegedly used miscellaneous weapons to force a potential robbery victim into his own car. Once in the car, the victim's pockets were searched and some items were taken. The victim was driven around by the 4 for about 10 to 20 minutes. They stopped the car, told the victim to take off his clothes (which he did) and left him. The victim contacted the police and later that evening the vehicle was located and the four men inside were arrested. Defendant was one of these men. The defendant claims that the victim went willingly in the car and that no robbery occurred.

## CONTENTIONS

Defendant challenges his conviction constitutionally and statutorily. He argues that because the record does not show the interpreter at the preliminary hearing was sworn, we must infer that no oath was given. Failure to

---

[1]"Interpreters may play three different roles in criminal proceedings: (1) They make the questioning of a non-English-speaking witness possible; (2) they facilitate the non-English-speaking defendant's understanding of the colloquy between the attorneys, the witness, and the judge; and (3) they enable the non-English-speaking defendant and his English-speaking attorney to communicate. In this [discussion] an interpreter performing the first service will be called a 'witness interpreter,' one performing the second service, a 'proceedings interpreter,' and one performing the third service, a 'defense interpreter.'" (Chang & Araujo, *Interpreters for the Defense: Due Process for Non-English-Speaking Defendant* (1975) 63 Cal.L.Rev. 801, 802, hereafter cited as Chang & Araujo.)

give an oath, he continues, violates Evidence Code sections 750 and 751,[2] the United States Constitution, and the California Constitution, by making the interpreter not "present." Defendant further argues that the simultaneous use of the interpreter provided at the preliminary hearing and at trial as both a defense and witness interpreter violates his constitutional rights, state and federal. Defendant also argues that he was not provided an interpreter throughout the preliminary hearing because the record reflected the interpreter was at least momentarily absent. Finally, defendant argues he did not waive the right to an oath requirement or to a separate interpreter by failing to object.

### DUAL USE OF A COURT-APPOINTED INTERPRETER VIOLATES THE CALIFORNIA CONSTITUTION.

Defendant first contends the trial and preliminary hearing courts erred in appointing a single interpreter, both to assist defendant in communicating with defense counsel and to interpret the testimony of Spanish-speaking witnesses. The crux of his argument is that a separate interpreter should have been present throughout the proceedings to simultaneously translate all spoken English words and to facilitate communication between defendant and his non-Spanish-speaking attorney. We agree.

The municipal court was on notice the defendant would need a defense interpreter prior to the beginning of the preliminary hearing. Indeed, an interpreter was present for this purpose. Irrespective of this knowledge, the court borrowed the interpreter when interpreter services were needed for a witness.

Article I, section 14 of the California Constitution grants to non-English-speaking criminal defendants the distinct right to an interpreter "throughout the proceedings." It provides in pertinent part: "A person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings." (Cal. Const., art. I, § 14.) The provision was adopted in 1974. Prior to enactment of this constitutional provision, courts had developed the rule that upon the defendant's showing of necessity, appointment of an interpreter was required as a matter of due process.

In the past, trial courts had been afforded broad discretion in determining whether a defendant's comprehension of English was minimal enough to render interpreter services "necessary." (*People* v. *Annett* (1967) 251 Cal.App.2d 858, 861-862 [59 Cal.Rptr. 888], cert. den., *Annett* v. *Califor-*

---

[2]All statutory references are to the Evidence Code unless otherwise indicated.

*nia* (1968) 390 U.S. 1029 [20 L.Ed.2d 287, 88 S.Ct. 1421]; *People* v. *Estany* (1962) 210 Cal.App.2d 609, 611 [26 Cal.Rptr. 757]; *In re Muraviov* (1961) 192 Cal.App.2d 604, 606 [13 Cal.Rptr. 466]; and *People* v. *Hernandez* (1957) 150 Cal.App.2d 398, 400 [309 P.2d 969]; see also *People* v. *Benavides* (1967) 255 Cal.App.2d 563, 566 [63 Cal.Rptr. 357].) ■ Nothing in the new constitutional provision changes this well established requirement of a finding of necessity by the trial court. Indeed, the provision specifically states that the right to an interpreter is contingent upon a person's being "unable to understand English." (Cal. Const., art. I, § 14.) ■ Prior to the right being spelled out in the state Constitution, the court's failure to appoint an interpreter upon a proper showing of need was deemed violative of fundamental fairness and sometimes required reversal of the defendant's conviction. (*People* v. *Annett, supra,* 251 Cal.App.2d at pp. 861-862.)

■ Various courts and commentators have noted denial of interpreter services impairs not only the defendant's due process rights, but also his rights to confront adverse witnesses, to the effective assistance of counsel, and to be present at his own trial. (See, e.g., *United States* ex rel. *Negron* v. *State of New York* (2d Cir. 1970) 434 F.2d 386, 389, due process, confrontation, and effective assistance of counsel; *Baltierra* v. *State* (Tex. Crim. 1979) 586 S.W.2d 553, 556-559, confrontation, presence at trial, and communication with counsel; *Commonwealth* v. *Pana* (1976) 469 Pa. 43 [364 A.2d 895, 898], confrontation, consultation with attorney, and presence at trial; *State* v. *Natividad* (1974) 111 Ariz. 191 [526 P.2d 730, 733], effective assistance, presence at trial; Chang & Araujo, *supra,* 63 Cal.L.Rev. at pp. 812-820, confrontation, effective assistance of counsel; see generally Annot., Right of Accused to Have Evidence or Court Proceedings Interpreted (1971) 36 A.L.R.3d 276; 6 Wigmore, Evidence (3d ed. 1940) § 1393, p. 117.)

■ Regarding the rights to effective assistance of counsel and to effective presence at trial, courts frequently have echoed the words of the United States Supreme Court that a criminal defendant must possess "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." (*Dusky* v. *United States* (1960) 362 U.S. 402 [4 L.Ed.2d 824, 80 S.Ct. 788], *per curiam,* quoted in *United States* ex rel. *Negron* v. *State of New York, supra,* 434 F.2d at p. 389, and in *Baltierra* v. *State, supra,* 586 S.W.2d at p. 556.)

■ Recently, in *People* v. *Menchaca* (1983) 146 Cal.App.3d 1019 [194 Cal.Rptr. 691], after quoting article I, section 14 of the California Constitution, the court succinctly stated, then answered, the question before it: "The essence of the issue presented is whether the presence of an interpreter

who is facilitating communication between witnesses testifying in defendant's native language, counsel and the trial court fulfills the constitutional mandate; we think not." (*Id.*, at pp. 1023-1024.) The court took judicial notice of the fact that an interpreter interpreting for a witness is often sitting near the witness. As a result, helping the defendant is difficult.

The court was further concerned that in such a case the defendant often has difficulty hearing the translated questions. Like *Menchaca,* the defendant in the case at bench would have had to hear the questions translated into Spanish to effectively understand the answers. Unlike the present case, however, defense counsel in *Menchaca* pointed out this difficulty to the court. (*Id.*, at p. 1024.) There was also difficulty on the part of defense counsel in *Menchaca* in understanding the translations. No such difficulty was expressed by counsel in the present case.

Critical to the case at bar, however, is the analysis set forth by the *Menchaca* court when it found that even assuming "defendant *could* hear and understand the answers given in Spanish, . . . it is not thereby established that he spontaneously understood the *testimony.* As is generally the case, the record is replete with monosyllabic witness answers. Without a clear understanding of the questions, such testimony is essentially meaningless." (*Ibid.*, original italics.) The record of the preliminary hearing in this case likewise contains monosyllabic witness answers.

In *Menchaca,* the unavailability of a second interpreter to assist the defendant was found to deny the defendant the spontaneous understanding of the testimony. (*Ibid.*) Such a denial violated the defendant's right to due process of law. (*Ibid.*, quoting *State* v. *Rios* (1975) 112 Ariz. 143 [539 P.2d 900, 901].) *People* v. *Chavez* (1981) 124 Cal.App.3d 215 [177 Cal.Rptr. 306], cites *Rios* with approval. (*Id.*, at pp. 226-227.) The defendant in *Chavez* was found to have been denied his right to an interpreter under the California Constitution when defense counsel was forced to act as the defense interpreter while the appointed defense interpreter was utilized as a witness interpreter. (*Id.*, at pp. 226-228.)

The *Menchaca* court went on to say that "a defendant's 'presence,' his sensibility and comprehension of the criminal trial process, is impaired in other ways by sole reliance on a witness interpreter. When acting in that capacity, an interpreter does not provide the defendant with translations of the court's rulings or of open-court colloquy between the bench and counsel. These are integral parts of 'the proceedings.'" (*Menchaca, supra,* 146 Cal.App.3d at p. 1025.)

Further, a federal district court, albeit expressly in dictum, has astutely observed that in an appropriate case a two-interpreter procedure would be necessary to ensure open communication between a defendant and his attorney while the testimony of non-English-speaking witnesses was being translated for the benefit of the court. (*United States* ex rel. *Navarro* v. *Johnson* (E.D.Pa. 1973) 365 F.Supp. 676.) The court in *Navarro* endorsed the precise concerns raised by defendant in the instant case: "[W]e feel it important to note one aspect of the matter not heretofore given much attention: The case may well arise where the defendant's constitutional rights may require the presence of *two* interpreters. Such a situation might have arisen in the present case during the period when the court interpreter was translating the testimony of the Spanish-speaking witness for the benefit of the Court, at which time Navarro was unable to communicate with his lawyer. Such situations are likely to occur in long trials where credibility is the central issue, where cross-examination of witnesses speaking in the foreign tongue is therefore critical, but where interruption of the testimony (as in the present case) is impractical. Unless a second interpreter is somehow furnished, the defendant's incapacity to respond to specific testimony will 'inevitably hamper the capacity of his counsel to conduct effective cross-examination.'" (*Id.*, at p. 681, fn. 3, original italics, quoting *United States* ex rel. *Negron* v. *State of New York, supra,* 434 F.2d at p. 390.)

A similar concern was expressed by two authors who asserted, inter alia, the need for separate "defense interpreters" to translate confidential discussions between the defendant and his attorney prior to and during trial. The authors observed: "Whether the courts or the legislature ultimately provide relief to the defendant disabled by inability to the (*sic*) speak English, the importance of a separate defense interpreter cannot be overstressed. While courts may wish to limit costs by appointing a single interpreter to translate both the court proceedings and the discussions between defendant and counsel, the use of a single translator for both purposes may prove inadequate. First, it is nearly impossible for one interpreter to translate the testimony of a witness while simultaneously translating and listening to the discussions between defendant and counsel. It is in these circumstances that a defense interpreter is most needed to ensure adequate representation by the defendant's counsel. Second, it is difficult for an interpreter who has worked closely with the defendant and his counsel in the preparation of the defense from the pretrial stage to translate the court proceedings impartially. Finally, a separate defense interpreter would serve to ensure the accuracy of the proceedings and witness interpreters." (Chang & Araujo, *supra,* 63 Cal.L.Rev. at pp. 821-822, fns. omitted.)

■ ■ ■ ■ The Judicial Council of California has acknowledged the need for multiple interpreters in the proper case. Effective July 1, 1979, the

council amended its recommended "Standards of Judicial Administration"[3] with a section on court interpreters: "(a) [When an interpreter is needed] An interpreter is needed if upon examination by the court a party or witness is unable to speak English so as to be understood directly by counsel, court, and jury, or if a party is unable to understand and speak English sufficiently to comprehend the proceedings and to assist counsel in the conduct of the case. Separate interpreters may be needed for each non-English speaking party. An additional interpreter may be needed to interpret witness testimony for the court." (§ 18, subd. (a), Standards of Jud. Admin.; see also 23 Pt. 2 West's Ann. Civ. & Crim. Court Rules (1981) Jud. Admin. § 18, subd. (a), p. 453 (hereafter cited as West's Court Rules).)

■■■■ The council's standard recognizes, as do the above discussed authorities, that an essential reason for an interpreter's presence is to enable a non-English-speaking defendant "to be understood directly by counsel . . . and to assist counsel in the conduct of the case." (*Ibid.*)[4]

Finally, defendant persuasively draws upon the broader principle of *People* v. *Chavez, supra,* 124 Cal.App.3d 215. As noted before, the court in *Chavez* reversed a criminal conviction because the trial court had impermissibly allowed defense counsel to perform the additional role of court interpreter. While the court primarily held the arrangement violated the defendant's constitutional right to an interpreter since the attorney's defense obligations to his client rendered "impossible" the task of providing an "accurate and complete" translation of the proceedings to his client, the court also noted the right to effective assistance of counsel "may be significantly impaired" when the defense attorney must simultaneously discharge the interpreter function. (*Id.,* at p. 227.) Respondent rightly points out that *Chavez* is distinguishable in that defense counsel below did not perform an inhibitory dual role, and that *Chavez* involved numerous errors. The broader principle of *Chavez,* however, is that any arrangement which diminishes or inhibits the defendant's right to a defense interpreter or to the effective assistance of counsel is constitutionally impermissible.

It is not only constitutionally essential but also eminently reasonable to require the appointment of a separate interpreter to facilitate communication between a defendant and his counsel "throughout the proceedings" and not to permit the defense interpreter to perform an additional role of interpreting

---

[3]The council's authority to recommend standards of judicial administration not inconsistent with statute is now granted by article I, section 6 of the California Constitution.

[4]Congress has expressed a similar concern for open lines of communication between defendant and counsel where a language barrier exists. In the Court Interpreter's Act of 1978, Congress mandated the appointment of an interpreter in both civil and criminal federal actions upon a showing, inter alia, that a party speaks "only or primarily" a language other than English "so as to inhibit such party's comprehension of the proceedings *or communication with counsel* . . . ." (28 U.S.C. § 1827 (d) (1978) italics added.)

witnesses' testimony for the court. The present case illustrates the point. When the Spanish-speaking victim was testifying, the interpreter was chiefly concerned with translating his testimony for the court and was not readily available to facilitate consultation between defendant and his counsel. It is true that if defense counsel and defendant wanted to consult one another, they could indicate their desire to do so and the interpreter would be made available to them, thereby interrupting the proceeding. Such an arrangement would significantly inhibit attorney-client communication. Simply put, it would require the defendant, in order to accomplish the otherwise simple task of consulting his counsel, to somehow make his intention known to the court and call the interpreter back to the counsel table. During the attorney-client conversation, attention undoubtedly would focus upon the scene at the counsel table, as occurs when counsel approach the bench for a private consultation with the court.

For defense counsel's part, the risk of alienating or antagonizing the jury or bench would infuse the mere act of speaking to his client with considerations of strategy and tactics, in contrast to the English-speaking defendant whose consultation would be unobtrusive and likely to go unnoticed. Communication between counsel and defendant should not be hampered by such concerns, nor should the exercise of a constitutional right depend upon whether the defendant is assertive enough to bring attention to himself.

Regarding the right to confrontation, California courts have long held that a defendant's presence includes presence both mentally and physically in order for the defendant to aid in his defense and assist counsel. (*People* v. *Berling* (1953) 115 Cal.App.2d 255, 267 [251 P.2d 1017].) In *People* v. *Guillory* (1960) 178 Cal.App.2d 854 [3 Cal.Rptr. 415, 80 A.L.R.2d 1077], the court urged that trial courts make a reasonable effort to assure a defendant's mental presence at trial: "It is a generally accepted rule that a trial judge should afford to a defendant who is handicapped by deafness, blindness or other affliction, such reasonable facilities for confronting and cross-examining the witnesses as the circumstances will permit." (*Id.*, at p. 861.) Providing an interpreter where a defendant is unable to understand English obviously presents an instance where a handicap can be readily accommodated by the court in the interest of fairness. (*People* v. *Estany, supra*, 210 Cal.App.2d 609, 611.)

The special role of the defense interpreter has been noted by the Supreme Court. No one questions the need to call for sworn interpreter services whenever a non-English-speaking witness appears. The witness interpreter enables the witness to understand the questions, and the people present to understand the answers. Additionally, a true record is made of the testimony. However, the witness interpreter performs a "much less bur-

densome function than an interpreter for a party." (*Jara* v. *Municipal Court* (1978) 21 Cal.3d 181, 183 [145 Cal.Rptr. 847, 578 P.2d 94], cert. den. (1979) 439 U.S. 1067 [59 L.Ed.2d 32, 99 S.Ct. 833].) Although the defense interpreter is not provided to increase the defendant's literacy in his native tongue, the language barrier is removed so as to place the defendant as nearly as possible in the position of his English-speaking counterpart in the criminal court.

Additionally, the defense interpreter is party to privileged communications in nonstructured conditions which may require something more than mere translation. At times the interpreter may have to accede to the desires of defense counsel whose work in the courtroom and in private conferences with the defendant may require the interpreter to vary the more routine services he would perform as a witness interpreter. His presence may assist defense counsel in assuring that testimony is being accurately translated. This potentially partisan role is to be recalled when we later consider the oath requirement.

In this case the victim-witness was unavailable at trial. His testimony from the preliminary hearing was read verbatim into the record in the presence of the jury. Having lacked a defense interpreter during the examination of this crucial witness at the preliminary examination, the use of the testimony at trial compounded any prejudice to the defendant's case arising from the lack of full confrontation of the witness and meaningful consultation with counsel.

■■■■ Defendant asserts he did not waive his right to a second interpreter by failing to object to the one-interpreter procedure. *People* v. *Chavez, supra,* 124 Cal.App.3d 215, held that because the right to an interpreter is expressly guaranteed by the Constitution, the right cannot be waived absent an affirmative showing on the record of an intelligent and voluntary waiver on the part of the affected defendant. (*Id.,* at p. 227.) We do not agree with the *Chavez* conclusion that the mere fact the right to an interpreter has been enacted in the state Constitution mandates a *Boykin-Tahl* form of waiver and per se reversal where the waiver does not appear on the record. That strict waiver rule, including its harsh penalty, is limited to certain constitutional rights applicable to the entry of a guilty plea. (*Id.,* at pp. 227-228; *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122, 132-133 [81 Cal.Rptr. 577, 460 P.2d 449]; see also *People* v. *Jackson* (1980) 28 Cal.3d 264 [168 Cal.Rptr. 603, 618 P.2d 149]; *In re Ronald E.* (1977) 19 Cal.3d 315 [137 Cal.Rptr. 781, 562 P.2d 684]; *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086]; *People* v. *Levey* (1973) 8 Cal.3d 648 [105 Cal.Rptr. 516, 504 P.2d 452]; Witkin, Cal. Criminal Procedure (1983 supp.

pt. 1) Proceedings Before Trial, § 255E, pp. 277-280.) While we are not unmindful of the fact that several other jurisdictions have adopted a *Boykin-Tahl* approach to waiver of the right to a defense interpreter, we remain unconvinced that every possible denial of the right will "irretrievably prejudice" the defendant.[5] (See, e.g., *United States* ex rel. *Negron* v. *State of New York, supra,* 434 F.2d at p. 390; *Baltierra* v. *State, supra* (Tex. Crim.) 586 S.W.2d at p. 559.)

We agree that some constitutional rights may be waived. In the words of our Supreme Court, "*We have no doubt that in the course of a trial a waiver of constitutional rights may be implied and need not necessarily be preceded by a full explanation of each right and its consequences.*" (*In re Tahl, supra,* 1 Cal.3d at p. 133, italics added.)

Nevertheless, when a defendant cannot communicate in English with counsel or cannot understand the English proceedings, that fact must be brought to the court's attention by the defendant or his counsel. Once that is done and the need for a defense interpreter has been found by the court, it will be presumed that the court has provided an interpreter and that the interpreter is at the defendant's side. The need for the presence of the defense interpreter having been established by the court, a withdrawal of the services of the interpreter for the court's use as a witness interpreter would be so potentially harmful to the defendant that an implied waiver would be inappropriate. "We indulge every reasonable presumption against the waiver of unimpaired assistance of counsel." (*People* v. *Mroczko* (1983) 35 Cal.3d 86, 110 [197 Cal.Rptr. 52, 672 P.2d 835].) We do not address the multitude of occasions when the interpreter's services may be interrupted because of the choice of defense counsel, or by counsel approaching the bench, going into chambers, or otherwise allowing the proceedings to go on outside the hearing of his client.

The record in the present case reveals no express waiver by the defendant or counsel, only acquiescence. In these specific circumstances we hold that

---

[5]The previously discussed commentators have also urged a per se standard of prejudice: "When the error alleged is a specific omission on the part of counsel the harmless error doctrine may be appropriate since an appellate court can assess the impact of a single error with reasonable ease. In the case of the non-English-speaking defendant, however, the language defect pervades the entire proceeding. Not only is it difficult for the defendant, his attorney, and the appeals court to isolate discrete errors due to miscommunication, but there is a high probability that undetectable errors and misunderstanding will profoundly affect the outcome. Because the potential for harm is great and the identification of specific instances of prejudicial harm may be impossible, courts should use a per se rather than a harmless error standard. When a needed interpreter has been absent at the trial court level, the appellate court should presume that prejudicial error has resulted and should order that the non-English-speaking defendant be granted a new trial with a defense interpreter." (Chang & Araujo, *supra,* 63 Cal.L.Rev. 801, 819-820.)

the constitutional right to a defense interpreter may not be waived by mere acquiescence, or nonverbal conduct on the part of the accused. Therefore, defendant in this case did not waive his right to a separate defense interpreter.

As previously noted, we do not agree with that part of the *Chavez* opinion which holds that borrowing the defense interpreter without an express waiver is reversal per se under *Boykin-Tahl*. We do not minimize the potential impact of the lack of a necessary defense interpreter on the constitutional rights of due process fairness, confrontation, effective assistance of counsel, and presence. However, we point out by analogy that protection of those rights does not always require a *Boykin-Tahl* waiver and per se reversal where that waiver has not been obtained.

A violation of the right to consult with counsel is grounds for reversal only where it appears to have materially affected the regularity of the accused's trial and conviction. (See generally *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]; *People* v. *Boyden* (1953) 116 Cal.App.2d 278, 285 [253 P.2d 773], consultation while incarcerated; see also *People* v. *Lathrom* (1961) 192 Cal.App.2d 216, 231 [13 Cal.Rptr. 325, 88 A.L.R.2d 785], consultation at trial.)

A violation of a defendant's constitutional right to confront witnesses against him is similarly not per se reversible error. (*Brown* v. *United States* (1973) 411 U.S. 223, 231 [36 L.Ed.2d 208, 93 S.Ct. 1565]; see also *People* v. *Stritzinger* (1983) 34 Cal.3d 505, 515-516, 520 [194 Cal.Rptr. 431, 668 P.2d 738], discussing the confrontation clause in the federal Constitution and the California Constitution.)

As discussed previously, the basic due process right of fairness has been the longstanding principle upon which California courts rely in holding that a defense interpreter is required where there is a showing of necessity. Not all errors which constitute a violation of due process are reversible per se. (*People* v. *Taylor* (1982) 31 Cal.3d 488 [183 Cal.Rptr. 64, 645 P.2d 115].) Again, a finding of prejudice may be required. (*People* v. *Bostick* (1965) 62 Cal.2d 820, 824 [44 Cal.Rptr. 649, 402 P.2d 529]; cf. *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

We therefore hold that in the absence of a waiver, the failure of the court to provide a needed defense interpreter throughout the proceedings. pursuant to article I, section 14 of our state Constitution, including borrowing the defense interpreter to interpret for a witness, is error; however, it is reversible error only when the defendant can show he suffered

prejudice from the lack of defense interpreter services. The prejudice, though, need not be actual, only an informed speculation that the defendant's right to effective representation was denied need be shown.

Due to the number and variety of other constitutional rights affected by the services of a defense interpreter, the standard test of prejudice involving violation of state constitutional guarantees in California seems inappropriate, if not unworkable. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243], cert. den., *Watson* v. *Teets* (1957) 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70].) Evenhanded application would be rendered impossible through use of the *Watson* standard.

The alternative standard we adopt today affords the defendant more protection, yet is flexible enough to deal with the various and complex situations intertwined with the right to defense interpreter services. This standard has been developed by our Supreme Court to deal with effective assistance of counsel, a primary concern of this court as expressed throughout the opinion we write today.

Where effective assistance of counsel is threatened by multiple representation of criminal defendants, the similar standard expressed by the Supreme Court is as follows: "[R]egardless of whether there was an objection—that even a potential conflict may require reversal if the record supports 'an informed speculation' that appellant's right to effective representation was prejudicially affected. Proof of an 'actual conflict' is not required." (*People* v. *Mroczko, supra,* 35 Cal.3d at p. 105.)

■ We additionally agree with both the *Chavez* and *Menchaca* opinions inasmuch as they express concern for a need for a precise rule of criminal procedure to be used by the lower courts which will guarantee that a waiver of such an important right is intelligent and voluntary.

We therefore suggest the following procedure to be employed when obtaining a waiver of the right to a defense interpreter when one is otherwise needed: In order for the waiver to be effective, the record should affirmatively show that the defendant has been found to be unable to understand English, that the court made the defendant aware of the right to a defense interpreter, that defendant was allowed to consult with counsel about the waiver, that the court explained to the defendant the nature and effect of the waiver, and that both defendant and defense counsel agreed to waive the right.[6] The waiver should be obtained for any of the proceedings in which a non-English-speaking defendant would participate.

---

[6]Significantly, the federal statute relating to interpreters expressly provides waiver of the right is effective "only if approved by the presiding judicial officer and made expressly by such individual on the record after opportunity to consult with counsel and after the presiding judicial officer has explained to such individual . . . the nature and effect of the waiver." (28 U.S.C. § 1827 (f)(1), *supra.*)

■ The facts in this case reveal that the primary witness against the defendant was the complaining party. That party testified at the preliminary hearing wherein he described the crimes of which he was a victim and positively identified the defendant as one of the perpetrators of those crimes. This witness testified in Spanish through the aid of the defense interpreter who was borrowed by the court to function during this testimony as a witness interpreter. Defendant did not waive his right to keep his interpreter at his side. The complaining witness subsequently became unavailable at trial and the preliminary hearing testimony was read verbatim to the jury. Defendant was therefore effectively precluded from ever having the benefit of a defense interpreter during the examination of the witness who delivered the most crucial and devastating evidence against him.

Informed speculation leads to the conclusion that defendant's right to a fair trial through effective assistance of counsel, confrontation of an important adverse witness, and complete mental presence were irretrievably lost during a critical portion of the proceedings. It is therefore unnecessary, under the facts of this case, for further speculation about other, more precise hypothetical examples of potential prejudice which may exist in this factual setting.

### Failure to Administer an Oath to an Interpreter Was Not Reversible Error.

■ The record shows only one instance where an interpreter was sworn. That oath was administered to an interpreter for the purpose of interpreting for a witness. No record exists which shows the witness interpreter at the preliminary hearing was sworn. Additionally, there is no record of any defense interpreter being sworn. Defendant urges this court to apply to defense interpreters the same oath requirements statutorily required for witness interpreters.

Sections 751 and 752 require witness interpreters be sworn. Those sections provide: "(a) An interpreter shall take an oath that he will make a true interpretation to the witness in a language that the witness understands and that he will make a true interpretation of the witness' answers to questions to counsel, court, or jury, in the English language, with his best skill and judgment.

"(b) A translator shall take an oath that he will make a true translation in the English language of any writing he is to decipher or translate." (§ 751.)

"(a) When a witness is incapable of hearing or understanding the English language or is incapable of expressing himself in the English language so

as to be understood directly by counsel, court, and jury, an interpreter whom he can understand and who can understand him shall be sworn to interpret for him.

"(b) The interpreter may be appointed and compensated as provided in Article 2 (commencing with section 730) of Chapter 3." (§ 752.) Defendant would have this court believe that, absent proof in the record that the interpreter was sworn, a presumption arises that no oath was given. In fact, the presumption runs in exactly the opposite direction. Both parties in this case overlook the significance of section 750. It provides as follows: "A person who serves as an interpreter or translator in any action is subject to all the rules of law relating to witnesses." (§ 750; see also *People* v. *Johnson* (1975) 46 Cal.App.3d 701 [120 Cal.Rptr. 372]; 1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 8.2, p. 299; Tent. Recommendation and a Study Relating to the Uniform Rules of Evidence, art. IV, Witnesses (Mar. 1964) 6 Cal. Law Revision Com. Rep. (1964) pp. 707-709.)

Since the defendant challenges his conviction on the grounds that the interpreter was not sworn while functioning in the capacity of a witness interpreter or in the capacity of a defense interpreter, it must be decided as a preliminary matter whether any oath whatsoever is required of a defense interpreter.

The Evidence Code clearly requires the swearing of witness interpreters because of its specific references to the interpreter as a witness in sections 751 and 752. Superficially, it appears that section 750 might encompass every sort of interpreter. As a result, a defense interpreter should be required an oath in the same way that a witness would, despite the fact that there is no specific reference to defense interpreters in sections 751 and 752. The more general language of section 750, covering all interpreters, may govern.

Relying on sections 750 and 751, the court in *People* v. *Menchaca, supra,* 146 Cal.App.3d at page 1025, concluded that the failure to administer the oath was fatal to the constitutional effectiveness of the substitute defense interpreter.[7] We disagree for two reasons. First, if treated as a witness interpreter, the failure to administer the oath may be waived by lack of objection. Second, keeping in mind the special role of the defense interpreter, the oath may not be required except for purposes of appearance and solemnity. In that event, the oath required of witness interpreters must be

---

[7]Lack of the statutory oath requirement was also mentioned in *People* v. *Chavez, supra,* 124 Cal.App.3d 215, although by itself this error did not require reversal. (*Id.,* at p. 227.)

modified, the statutory language obviously not being suitable to cover all the duties of defense interpreters.[8]

Aside from the lack of a specific defense interpreter oath in the code, practical problems arise which are inapplicable to witness interpreters. The defense interpreter functions in court and elsewhere during conferences between defense counsel and defendant. If an oath is requested, or required, it must be given at the earliest opportunity in order to provide for private conferences. Once should be enough for the entire proceeding.

Support for the conclusion that the defense interpreter need not be sworn is found in the comment of the California Law Revision Commission to section 750. It states that section 750 is a codification of earlier cases, giving by example one dealing with interpreters and one with translators. The interpreter case cited discusses only the witness interpreter situation. (Evidence Code With Official Comments (Aug. 1965) 7 Cal. Law Revision Com. Rep. (1965) p. 1114, citing *People* v. *Lem Deo* (1901) 132 Cal. 199, 201 [64 P. 265]; see also Cal. Law Revision Com. com. to Evid. Code, § 750, 29B West's Ann. Evid. Code (1966 ed.) p. 75.) Without section 750 as a basis for an oath requirement for defense interpreters, none exists: the Constitution does not mandate it, nor under this analysis do the statutes.

An argument may be made that defendant is provided a defense interpreter much as he is assigned a private investigator or psychiatrist. In each case the professional licensing requirements of the state may constitute the only prerequisite to such service. ▇▇▇ An oath is not required unless testimony is contemplated. (6 Wigmore, Evidence (Chadbourn rev.ed. 1976) § 1824, pp. 408-409 (1983 pocket supp.) p. 18.) The work of the defense interpreter ordinarily does not become a part of the record, unlike the work of the witness interpreter. Finally, we know of no oath requirement when defendant brings his own personally paid defense interpreter.

▇▇▇ We now proceed on the assumption that the oath is required, for if waiver applies to the failure of the witness interpreter to be sworn, even more so does it apply to the defense interpreter.

Because section 750 places an "interpreter" in the position of a witness, we look to the status of an unsworn witness. Testifying witnesses must be

---

[8]The Judicial Council of California has accurately anticipated some of the special problems surrounding defense interpreters: "(c) [Confidentiality] A court interpreter should not disclose privileged communications between counsel and client. A court interpreter should not make statements about the merits of the case during the proceeding." (§ 18.3, subd. (c), Standards of Jud. Admin.; see also West's Court Rules, *supra*, § 18.3, subd. (c) at p. 456.) Professor Wigmore has shown a similar concern for confidentiality. (8 Wigmore, Evidence (McNaughton rev.ed. 1961) § 2317, p. 618.)

sworn. "Every witness before testifying shall take an oath or make an affirmation or declaration in the form provided by law." (§ 710.)

Where there is no evidence in the record that a witness has been sworn, an appellate court "must assume the officer performed his duty and that the witnesses were sworn. The burden is on the appellant to show, on appeal, that the witnesses were not sworn." (*Estate of Da Roza* (1947) 82 Cal.App.2d 550, 555 [186 P.2d 725]; see also *People* v. *Hernandez, supra,* 150 Cal.App.2d at p. 401.) ■ Further, the Legislature has committed California courts to a liberal policy when ruling on questions regarding formalities in oath taking. (*People* v. *Walker* (1967) 247 Cal.App.2d 554, 562 [55 Cal.Rptr. 726], cert. den., *Walker* v. *California* (1967) 389 U.S. 824 [19 L.Ed.2d 77, 88 S.Ct. 60], interpreting Pen. Code, § 121.)

■ If we disregard the above presumption which is in favor of an oath having been given, on this aspect of the appeal the conviction would still be affirmed on two other grounds. First, failure to swear an interpreter is not reversible error, per se or otherwise. Again, it must be recalled that interpreters are subject to all rules of law applicable to witnesses, and that witnesses, too, must be sworn. However, where a witness is not sworn, automatic reversal does not necessarily follow. Unsworn testimony does not constitute a nullity. (*Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 377 [93 Cal.Rptr. 752, 482 P.2d 664].)

Section 751 provides that "[a]n interpreter *shall* take an oath . . . ." (Italics added.) The oath requirement is nondiscretionary. Section 710, applicable to witnesses generally, likewise uses the mandatory language: "Every witness before testifying *shall* take an oath . . . ." (Italics added.) As *Richard M.* demonstrates, failure to comply with the mandatory language of section 710 is not ipso facto reversible error. Section 750 makes it clear that this same rule of law for witnesses is statutorily applicable to interpreters.

■ Second, at no time during defendant's trial did he or his attorney object to an oath not being administered to the interpreter. The question therefore arises whether defendant's right to object to the court's alleged statutory error has been waived.

■ Once again, applying to interpreters the rules of law applicable to witnesses while simultaneously assuming no oath was given, we find that if a witness is permitted to testify without having taken the appropriate oath, the defect must be timely noted and failure to do so constitutes a waiver. (*Herbert* v. *Superior Court* (1981) 117 Cal.App.3d 661, 665, fn. 2 [172

Cal.Rptr. 850, 19 A.L.R.4th 1276], discussing § 710; *Fraser* v. *Fraser* (1919) 39 Cal.App. 467, 470 [179 P. 427].)

In *People* v. *Thomas,* a case dealing with the adequacy of the oath given, rather than the question of whether any oath was administered, the court held, "In any event, if defendant was unsatisfied with the adequacy of the oath-taking, he should have called the matter to the attention of the court. Any shortcomings in the procedure were waived both by failure to object and by taking the witness on cross-examination. [Citations.]" (*People* v. *Thomas* (1967) 65 Cal.2d 698, 708 [56 Cal.Rptr. 305, 423 P.2d 233], cert. den., *Thomas* v. *California* (1967) 389 U.S. 868 [19 L.Ed.2d 143, 88 S.Ct. 140].)

Similarly, in *Estate of Da Roza,* the court held: "[T]he record discloses no objection at the hearing on the part of appellant to their testimony on the ground that the witnesses were not sworn. We must presume that appellant failed to object to the evidence on that ground. He thereby waived his objection to the competency of the evidence. [Citations.] The rule in both civil and criminal cases, with respect to waiver of the objection to testimony of witnesses who have not been first sworn, is stated in the text of 70 Corpus Juris at page 487, which is supported by numerous authorities from various jurisdictions, as follows:

" 'The right to object to the failure to have a witness properly sworn may be waived by failing to object in time or by express consent. . . . Accordingly, it has been held that, in order to prevent waiver of an objection that a witness has not been properly sworn, objection should be made during the trial, or before verdict, or while the defect is capable of being remedied, and cannot be urged as a ground for a new trial.'

"The foregoing rule appears to be reasonable. Otherwise a litigant who is present at a trial and has full knowledge of an inadvertent omission to swear a witness would be enabled to remain silent and speculate on receiving a favorable judgment or verdict, failing which, he might upset the entire proceeding by either a motion for new trial or an objection on that ground for the first time on appeal. The gist of the reason for the foregoing rule is that the court and adverse litigants are entitled to notice of the omission while there is still an opportunity to correct the oversight in the procedure." (*Estate of Da Roza, supra,* 82 Cal.App.2d 550, 555-556; accord, 98 C.J.S., Witnesses, § 320, pp. 23-24.) California case law is replete with instances of such waiver. (*People* v. *Haeberlin* (1969) 272 Cal.App.2d 711, 716 [77 Cal.Rptr. 553]; *People* v. *Berry* (1968) 260 Cal.App.2d 649, 653 [67 Cal.Rptr. 312]; *Trigueiro* v. *Skow* (1937) 24 Cal.App.2d 253, 255-256 [74 P.2d 836]; *People* v. *Duffy* (1930) 110 Cal.App. 631, 635-636 [294 P. 496];

see also 81 Am.Jur.2d, Witnesses, § 414, p. 421; 98 C.J.S., Witnesses, § 320, pp. 22-23.)

A similar rule, with nearly identical reasons, has developed in federal courts. (*United States* v. *Perez* (5th Cir. 1981) 651 F.2d 268, 272-273, waiver of the oath requirement of Fed. Rules Evid., rule 604, where no objection was made to interpreter not being sworn; see also *Wilcoxon* v. *United States* (10th Cir. 1956) 231 F.2d 384, 386-387, cert. den. (1956) 351 U.S. 943 [100 L.Ed. 1469, 76 S.Ct. 834]; *Beausoliel* v. *United States* (D.C. Cir. 1939) 107 F.2d 292, 294.) The *Perez* court made an additional perceptive observation as to why a waiver of the oath requirement may exist where interpreters are involved: "If this [waiver] be true of a witness, one who may and often does have an interest in the outcome of the trial and who may therefore require the admonition of an oath 'in a form calculated to awaken his conscience and impress his mind' with his duty to tell the truth, how much more so of an interpreter. Such court functionaries stand somewhere between an expert witness called by the court and the court reporter." (*Perez, supra,* at p. 273, fn. omitted.)

 Defendant's counsel was present throughout the trial. Counsel, seeing that an interpreter was not sworn, could easily object at the time and thereby cure any error. More generally, it has been held that where a defendant fails to object at trial to an interpreter's qualifications, the issue cannot be raised for the first time on appeal. (*People* v. *Reyes* (1976) 62 Cal.App.3d 53, 70 [132 Cal.Rptr. 848]; see also 18 Cal.Jur., Interpreters, § 772, pp. 438-439.)

 The failure to object to the erroneous admission of evidence may not constitute a waiver if the " ' 'error has resulted in a denial of due process of law.' " (*People* v. *Mills* (1978) 81 Cal.App.3d 171, 176 [146 Cal.Rptr. 411], quoting Assem. Jud. Com. com. to § 353; see also *United States* v. *Atkinson* (1936) 297 U.S. 157, 160 [80 L.Ed. 555, 56 S.Ct. 391].) In *Mills,* the court held that "unless the error is fundamental, so gross in character as to result in a denial of due process, [the defendant] cannot in good grace here raise the question. This rule has greater applicability where a defendant has assented to or recognized the validity of matters or proceedings." (*Mills, supra,* 81 Cal.App.3d at p. 176.) In the present case, if there was an inadvertent omission of an interpreter oath requirement, it should not be regarded as such a "rank" error. (*United States* v. *Perez, supra,* 651 F.2d at p. 273.)

For the above reasons, we hold that the defendant waived his right to sworn interpreters.

We therefore conclude that a non-English-speaking defendant must be provided a defense interpreter upon request of defendant, counsel, or when the need otherwise comes to the attention of the court, unless expressly waived by the defendant and his counsel. Once the need becomes a matter of record, it presumably continues. A violation of this right is reversible error only if an informed speculation by the reviewing court reveals that the defendant's right to effective representation was prejudicially affected under the peculiar facts of the case. Proof of actual prejudice is not required. Whether the interpreter's oath is considered to be optional, or mandated, failure of timely request or objection constitutes a waiver of oath.

The judgment is reversed.

Franson, Acting P. J., and Zenovich, J., concurred.