[No. F005147. Fifth Dist. Jan. 31, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
MANUEL RAMIREZ GUTIERREZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and III.

**COUNSEL**

Jeff Reich, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Edmund D. McMurray and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CASTELLUCCI, J.**\*—Defendant, Manuel Ramirez Gutierrez, appeals from the judgment entered on a jury verdict convicting him of violating Penal Code section 451, subdivision (d), arson of property. We affirm the judgment.

---

\*Assigned by the Chairperson of the Judicial Council.

## THE FACTS

Ramon Magana owned the Jalisco Restaurant. The restaurant is open 24 hours a day. Defendant is a field worker. For several months, with few exceptions, the defendant waited outside the Jalisco Restaurant in the early morning hours for a bus to take him to work in the fields. He would often go into the restaurant prior to going to work to order coffee and have a lunch prepared to take with him.

On August 21, 1984, defendant entered the Jalisco Restaurant at about 6 a.m. Defendant offered to sell Ramon Magana some liquor. He declined and told the defendant to leave because he did not want him in the restaurant with his box of liquor. Defendant called Ramon some names and began to leave. As he went out the door he told Ramon he was going to "screw up" his cars.

Defendant returned to the restaurant the same day at approximately 4 p.m. Ramon shouted at him and told him to leave. Ramon attempted to hit the defendant but he was restrained by his brothers-in-law. The defendant left.

At around 3 a.m. on August 22, 1984, defendant came into the Jalisco Restaurant, asked for Ramon, and asked for a cup of coffee. The defendant left without seeing Ramon and without his cup of coffee. Within about five minutes Ramon's wife came into the restaurant and told Ramon that his pick-up truck was on fire. Ramon went outside and extinguished the fire. He then called the fire department.

John Salveson, a fire investigator for the Fresno City Fire Department, responded to the fire. He conducted an investigation and concluded someone poured a small amount of flammable liquid, possibly gasoline, onto the driver's seat of the vehicle and using a heat producing or open flame device set the vehicle on fire.

In September 1984, an officer came to the Jalisco Restaurant and asked Ramon to come with him. Ramon, accompanied by his son George, was taken across the street. The defendant was being detained there by two officers. Ramon saw the officers and told them that defendant was the one who told him he was going to "screw up" his cars. As Ramon turned to leave, the defendant spoke to him in Spanish and said either "And this time, I'm going to burn your restaurant." or "Do you want me to burn down the restaurant now?" Ramon's son told the officer what the defendant said.

*Defense*:

Defendant testified he went to the Jalisco Restaurant almost daily to meet the bus to take him to the fields. On August 21, 1984, he did not go to work

because his friend brought him some liquor to sell. He sold beer to Mrs. Magana early in the morning. He was drunk. He returned to the restaurant to have some coffee and Ramon told him to leave. Defendant said he wanted to drink his coffee. Ramon again told him to leave and hit him. Defendant returned to the restaurant that afternoon and Ramon again ordered him to leave and hit him. Defendant returned to the Jalisco Restaurant at 3 a.m. on August 22, 1984. He went in to order his coffee but it was too busy. He got his coffee and his lunch down the street. He stood outside the restaurant waiting for his ride to the fields.

When arrested in September, defendant was questioned on the street corner for 30 minutes. When Ramon and his son came to identify him he was hot and sweaty. His hands were restrained behind his back and he was unable to wipe the perspiration from his forehead.. Ramon and his son started making fun of him, and defendant blurted out "You want your restaurant burned down?" Defendant had previously been told that Ramon had accused him of setting his vehicle on fire, and he made this statement because he was angry. He denied setting Ramon's vehicle on fire.

I.*

. . . . . . . . . . . . . . . . . . . . . . . . .

II.

## Was Defendant's Statement Voluntarily Made? Absent a Specific Objection Based on Voluntariness, Did the Court Have a Sua Sponte Duty to Conduct a Hearing to Determine Voluntariness?

 Defendant asserts that the admission he made after his arrest about burning down the restaurant was not voluntarily obtained and should have been suppressed. Relying on *People* v. *Fowler* (1980) 109 Cal.App.3d 557 [167 Cal.Rptr. 235], he contends that counsel below need not have objected to the evidence based on voluntariness but that her objection based on Evidence Code section 352 triggers a duty in the trial court to conduct a voluntariness hearing.

---

*See footnote page 92, *ante*.

Defendant supplies the following quotation from *Fowler* to support his position that any objection to the admission of an incriminating statement triggers a duty in the trial court to conduct a voluntariness hearing.

"It has long been established that any confession, or any admission or statement by the accused relative to the offense must be excluded if involuntary [citation]. Moreover, a defendant in a criminal case has a constitutional right at some stage of the proceedings to have a fair hearing and a reliable determination on the issue of voluntariness. This hearing must be by the court, not the jury. [Citations.] *The right to such a hearing is triggered by an objection on any grounds to the admission of the incriminating statement.* (See Jefferson, Cal. Evidence Benchbook (1978 Supp. § 23.3, p. 257.)" (*Id.,* at p. 563, italics added.)

In *Fowler,* "defendant made objection to the testimony of the officer to whom she had admitted driving the automobile. The ground of objection was that although she had been given her *Miranda* rights it was questionable that she was able to understand them and voluntarily waive them, since she was badly shaken by the accident and also intoxicated. She did not however ask for a hearing outside the jury's presence." (*Ibid.*)

Defendant's reliance on the above underscored sentence is misplaced. He has taken the statement "an objection on any grounds" out of context and stretched its meaning. The more reasonable meaning to be attached to this is that an objection on any ground *involving voluntariness* triggers the duty to hold a hearing on the issue of voluntariness. Objections to voluntariness can be based on many grounds: failure to give *Miranda* warnings, inadequate waiver of *Miranda* rights, promises of leniency, infliction of physical harm, etc.

To interpret this language to mean that the trial court is required to hold a hearing to determine the voluntariness of an admission when an objection is made that does not question the voluntariness of the admission would place an undue burden on the trial court (requiring it to be clairvoyant), would be a waste of time, and would defeat the clear language of Evidence Code section 353.

Evidence Code section 353 provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless:

"(a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion; and

"(b) The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice."

## III.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## IV.

### A NON-ENGLISH-SPEAKING DEFENDANT IS NOT ENTITLED TO A SWORN CERTIFIED INTERPRETER WHEN INTERVIEWED BY THE PROBATION OFFICER WHO IS PREPARING THE PRESENTENCE REPORT.

The probation office was ordered to prepare a presentence report. The defendant was interviewed at the jail by a probation officer. An honor release officer at the jail (Mr. Arce) acted as an interpreter for the interview. The record does not show whether Mr. Arce was either sworn or certified as an interpreter.

Defendant contends that he had a constitutional and statutory right to a sworn certified interpreter during the interview conducted for the preparation of the presentence report of the probation officer. He asserts that the preparation of the report of the probation officer is a crucial stage of the "proceedings" and that article I, section 14 of the California Constitution mandates that such an interpreter be provided at this time.

Respondent asserts that neither the statutory nor constitutional provisions require an interpreter at the probation interview. Also, respondent contends the defendant has not shown he suffered any prejudice because he was not provided a "proper" interpreter during the interview. Furthermore, defense counsel's failure to object at the sentencing hearing to the use of Mr. Arce during the probation interview waives any objections as to his qualifications on appeal.

Defendant contends that a personal waiver by the defendant is required in order to waive an interpreter issue on appeal.

Article I, section 14 of the California Constitution provides:

---

*See footnote page 92, *ante.*

"Felonies shall be prosecuted as provided by law, either by indictment or, after examination and commitment by a magistrate, by information.

"A person charged with a felony by complaint subscribed under penalty of perjury and on file in a court in the county where the felony is triable shall be taken without unnecessary delay before a magistrate of that court. The magistrate shall immediately give the defendant a copy of the complaint, inform the defendant of the defendant's right to counsel, allow the defendant a reasonable time to send for counsel, and on the defendant's request read the complaint to the defendant. On the defendant's request the magistrate shall require a peace officer to transmit within the county where the court is located a message to counsel named by defendant.

"*A person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings.*" (Italics added.)

Whether under article I, section 14 of the California Constitution one has a right to an interpreter at the presentence interview turns upon the definition ascribed to the word "proceedings." If, as respondent asserts, "proceedings" includes only those proceedings held before a judicial tribunal, then defendant's argument must fail. If, as defendant contends, "proceedings" is not limited to in-court proceedings, then an interpreter at a probation interview is constitutionally required.

In *Gibson* v. *County of Sacramento* (1918) 37 Cal.App. 523 [174 P. 935], the court defined "criminal proceedings" as used in Political Code section 4307.[6] "A 'criminal proceeding' means some authorized step taken *before a judicial tribunal* against some person or persons charged with the violation of some provision of the criminal law." (*Id.,* at p. 526, italics added.)

Black's Law Dictionary (5th ed. 1979) at page 1083 defines "proceeding" as follows: "In a general sense, the form and manner of conducting juridical business before a court or judicial officer. Regular and orderly progress in form of law, including all possible steps in an action from its commencement to the execution of judgment. Term also refers to administrative proceedings before agencies, tribunals, bureaus, or the like."

"Judicial officer" is defined at page 761 as follows: "A judge or magistrate. The term, in the popular sense, applies generally to any officer of a

---

[6]Political Code section 4307, subdivision 3, read as follows in 1918: "'The expenses necessarily incurred in the support of persons charged with or convicted of crime and committed therefor to the county jail, and for other services in relation to *criminal proceedings* for which no specific compensation is prescribed by law.'" (Italics added.) (*Gibson* v. *County of Sacramento, supra,* 37 Cal.App. at p. 525.)

court, but in the strictly legal sense applies only to an officer who determines causes between parties or renders decision in a judicial capacity. One who exercises judicial function. Adams v. State, 214 Ind. 603, 17 N.E.2d 84. A person in whom is vested authority to decide causes or exercise powers appropriate to a court.''

"Legal proceedings" is defined at page 807 as follows: "Term includes all proceedings authorized or sanctioned by law, and brought or instituted in a court or legal tribunal, for the acquiring of a right or the enforcement of a remedy.''[7]

All of these definitions indicate that a proceeding, in the legal sense, is limited to a proceeding held before a judicial tribunal. The probation interview is not held in a courtroom or in a formal type of setting.

The California Supreme Court in *People* v. *Aguilar* (1984) 35 Cal.3d 785 [200 Cal.Rptr. 908, 677 P.2d 1198], defined the role of interpreters.

"Interpreters play three different but essential roles in criminal proceedings: '(1) They make the questioning of a non-English-speaking witness possible; (2) they facilitate the non-English-speaking defendant's understanding of the colloquy between the attorneys, the witness, and the judge; and (3) they enable the non-English speaking defendant and his English-speaking attorney to communicate . . . an interpreter performing the first service will be called a "witness interpreter," one performing the second service, a "proceedings interpreter," and one performing the third service a "defense interpreter." ' '' (*Id.*, at p. 790.) The interview with the probation officer does not fit into any of the above categories for a role of an interpreter in "criminal proceedings.''

All of the above lends substantial support to the position that an interpreter is not constitutionally required at a probation interview because it is not a "proceeding.'' This then leads to a look as to whether policy considerations would support the defendant's assertion.

Sentencing is a critical phase in a criminal proceeding. Penal Code section 1203d requires that a copy of the presentence report be filed with the court,

---

[7]The word "proceeding" is defined in Evidence Code section 901. Although this definition is expressly limited to division 8 (privileges) of the code, it sheds some light on the meaning of the term "proceeding." Evidence Code section 901 provides: " 'Proceeding' means any action, hearing, investigation, inquest, or inquiry (whether conducted by a court, administrative agency, hearing officer, arbitrator, legislative body, or any other person authorized by law) in which, pursuant to law, testimony can be compelled to be given.''

and Penal Code section 1203, subdivision (d) requires that the court consider the report and make an express statement that it has considered the report on the record. The probation officer's report is an integral part of the critical stage of sentencing. There is therefore a strong need for an interpreter at this stage in order for non-English defendants to have a meaningful interview. This need is recognized in Government Code section 68560 which provides in pertinent part: "The Legislature finds and declares that: . . . ¶ The Legislature recognizes the need to provide equal justice under the law to all California citizens and residents and the special needs of non-English-speaking persons in their relations with the judicial system."

Whether these policy reasons can be interpreted as *constitutionally* mandating an interpreter at this stage of the proceeding must be looked at by examining the nature of the sentencing hearing. The defendant is clearly constitutionally entitled to an interpreter at his sentencing hearing and one was provided to the defendant in the instant case. Unlike a trial or other courtroom proceeding when things are happening quickly and the defendant is in need of an interpreter in order to quickly and properly assert his rights and understand what is going on, the probation report is memorialized in written form and the defendant is given the opportunity to review it in an unhurried fashion prior to the sentencing hearing. (At least two days prior and five days prior if the defendant so requests. See Pen. Code, § 1203d.) Any misunderstandings or errors in interpretation can be pointed out in a timely fashion prior to the report being utilized by the sentencing court. If necessary, the court might require the interpreter at the sentencing hearing to read to the defendant any portions of the report gleaned from his interview. The defendant, as well as counsel, is also allowed to make any statements he wishes prior to the court's pronouncement of sentence. Although the interview with the probation officer is a crucial stage, the safeguards built into the sentencing hearing give support for the interpretation that the constitutional requirement of article I, section 14 of the California Constitution that a non-English-speaking defendant be given an interpreter "throughout the proceedings" was not meant to encompass those proceedings which take place outside the courtroom setting.

A probation interview is not a "proceeding" in which article I, section 14 of the California Constitution requires an interpreter be provided to a non-English-speaking defendant. The statutes requiring certification of and the giving of an oath to interpreters were meant to apply to those judicial proceedings when an interpreter is so mandated.[8]

---

[8]The Constitution does not mandate the giving of an oath. (*People* v. *Carreon* (1984) 151 Cal.App.3d 559, 579 [198 Cal.Rptr. 843].)

■ Although the same procedural safeguards required at trial on the issue of guilt are not required at probation hearings, "an applicant for probation is nevertheless entitled to relief on due process grounds if the hearing procedures are fundamentally unfair." (*People* v. *Peterson* (1973) 9 Cal.3d 717, 726 [108 Cal.Rptr. 835, 511 P.2d 1187].) ■ We recognize that the probation interview would be reduced to a sham if it were conducted by an English-speaking probation officer with a non-English-speaking defendant without the aid of an interpreter. In order for the interview to be meaningful, someone must be available to interpret for the non-English-speaking defendant. However, this "someone" is not required to be sworn nor certified. If there is a problem with the interpretation at the interview, the time to raise the issue is at the sentencing hearing. At that time a sworn and certified courtroom interpreter would be available to help resolve the problem before sentence is pronounced. After a proper request by the defendant, the failure of the trial court to remedy a problem which arose during the probation interview could result in a due process violation. Defendant did not make an objection at the sentencing hearing and has thus waived the right to claim such an error on appeal.

Defendant relies on the following language from *People* v. *Aguilar, supra,* 35 Cal.3d at page 794, in support of his position that a waiver has not occurred: "'The right to an interpreter having since been guaranteed in the Constitution, it may not validly be waived without an "affirmative showing," on the record, of waiver which was "intelligent and voluntary" on the part of the affected defendant.' [Citation.] We agree and thus we hold that a personal waiver by the defendant was required. The mere acquiescence by counsel did not waive the right to interpreter assistance."

Defendant fails to recognize that this language applies to an interpreter as required by the California Constitution article I, section 14. Defendant also fails to recognize that since an interpreter *was* provided to him the foregoing language is inapplicable in any event.

The judgment is affirmed.

Franson, Acting P. J., and Hanson (P. D.), J., concurred.

A petition for a rehearing was denied February 19, 1986, and appellant's petition for review by the Supreme Court was denied May 22, 1986.