[No. 12588-2-III.    Division Three.    September 1, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. TUOC
BA PHAM, *Appellant.*

*Paul J. Burns,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for respondent.

SWEENEY, J. — Tuoc Ba Pham appeals a jury conviction of first degree child rape and first degree child molestation. RCW 9A.44.073(1), .083(1).[1] He contends the court erred in (1) ruling the victim was competent to testify; (2) admitting hearsay statements the victim made to family members; and (3) allowing an uncertified interpreter to translate the victim's trial testimony. For the first time at oral argument, Mr. Pham further asserts he was deprived of his Sixth Amendment right to counsel. We affirm.

---

[1]"A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim." RCW 9A.44.073(1).

"A person is guilty of child molestation in the first degree when the person has sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." Former RCW 9A.44.083(1).

## FACTS AND PROCEDURAL HISTORY

T.T., age 9 at the time of trial, came to the United States from Vietnam. For a short period of time while her mother traveled, T.T. lived with her grandmother and Mr. Pham, her grandfather by marriage. When her mother returned to Spokane, T.T. told her mother that Mr. Pham had taken her pants off and "licked her bird".

At a pretrial competency hearing, the court permitted T.T.'s mother to assist Dave Williams, a certified court interpreter, in understanding T.T., who has a speech impediment. T.T. said she was in the second grade, counted to 10, indicated what colors certain objects were, and recited the alphabet. She did not know the exact date she came to the United States, but remembered it was around the Vietnamese New Year. She recalled being in a car accident when her family visited Canada. The record indicates she understood the difference between the truth and a lie. T.T. "forgot" where she lived, when her birthday was, and the name of her school.

The prosecutor asked T.T. several questions about the incident with Mr. Pham, and T.T. was examined by defense counsel. The court held she understood her obligation to speak the truth and was competent to testify. *State v. Allen*, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967). Further, the court ruled T.T.'s statements to her mother, grandmother, uncle and aunt concerning the incident were admissible, but that T.T.'s statements to the prosecutor were not because they did not meet the indicia of reliability. *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984).

Prior to trial, the prosecutor informed the court T.T. was not comfortable working with a male interpreter but answered questions more openly with a female interpreter. She argued good cause existed for the use of an uncertified interpreter and recommended either Twan Pace or Sylva Lamb, who was serving as Mr. Pham's interpreter. Defense counsel expressed a preference for Mr. Williams.

The court asked Mr. Williams whether T.T.'s difficulty in answering was gender related or a speech impediment

problem. Mr. Williams responded it was difficult to understand T.T. because of her speech impediment and that the court "might have better luck with a female" interpreter. The court ruled a female interpreter would be used and asked defense counsel his preference. Counsel opposed Ms. Pace because she had previously spoken with T.T. but stated: "If the Court is leaving us no choice but to have a different interpreter, which my objection has been made known, I would suggest my interpreter [Sylva Lamb]." The court instructed Mr. Williams to ensure Ms. Lamb's interpretation was accurate.

The jury returned a verdict of guilty. This appeal follows.

## COMPETENCY TO TESTIFY

Mr. Pham first contends the court erred in ruling T.T. was competent to testify. He concedes T.T. understood her obligation to speak the truth, but argues the record does not support the court's determination she had the capacity to express in words her memory of the alleged occurrence or to understand simple questions about it. We do not agree.

■ A witness is competent to testify if he or she " 'has sufficient mental capacity to understand the nature and obligation of an oath and [is] possessed of sufficient mind and memory to observe, recollect, and narrate the things he [or she] has seen or heard.' " *Ryan*, at 171 (quoting *State v. Moorison*, 43 Wn.2d 23, 28-29, 259 P.2d 1105 (1953)). Those "who appear incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly" are not competent to testify. RCW 5.60.050(2). The determination of whether a child witness is competent is within the sound discretion of the trial court and will not be disturbed on appeal absent a manifest abuse of discretion. *State v. Smith*, 97 Wn.2d 801, 803, 650 P.2d 201 (1982); *State v. Wyse*, 71 Wn.2d 434, 437, 429 P.2d 121 (1967).

■ The test for competency of a young child as a witness consists of the following:

(1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accu-

rate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.

*Allen*, at 692; *State v. Smith*, 30 Wn. App. 251, 253, 633 P.2d 137 (1981), *aff'd*, 97 Wn.2d 801, 650 P.2d 201 (1982). The age of the child is not determinative of his or her capacity as a witness. *State v. Ridley*, 61 Wn.2d 457, 378 P.2d 700 (1963). "Intelligence, not age, is the proper criterion to be used . . .." *Allen*, at 692.

Here, the court observed T.T. and considered both her capacity to understand and her intelligence. The court addressed each *Allen* factor. Although T.T. had difficulty communicating and answering some basic questions, she knew the distinction between the truth and a lie.

To determine whether T.T. demonstrated the mental capacity to receive an accurate impression of the incident, the court considered T.T.'s ability to recollect details about an automobile accident in Canada which occurred a short time before the incident with Mr. Pham. T.T. remembered who she was with, where her family was and the injuries she suffered. This evidence convinced the court T.T. had the capacity to receive an accurate impression about the sexual incident.[2]

Although T.T. had difficulty answering some simple questions, she expressed sufficient recollection of the sexual incident. She used her own words and testified how and when Mr. Pham touched her. She demonstrated the capacity to express a memory of the occurrence. We find no abuse of discretion.

## RELIABILITY OF HEARSAY STATEMENTS

Mr. Pham next contends the court erred in admitting the hearsay statements T.T. made to family members. He main-

---

[2]The court stated: "She made a lot of mistakes in her testimony. I think a lot of it can be brought back to the language barrier, to a speech impediment, and to the nerves that a child of this age would, and did, display on the witness stand. I am impressed by her testimony with respect to the automobile accident, and those areas. That has convinced me that she does have the capacity required under the second element set out in the *Allen* case."

tains there was no corroboration of the allegations and the record does not reflect adequate indicia of reliability.

■ Hearsay statements made by a victim of child abuse under age 10 may be used in a criminal proceeding if "[t]he court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability". RCW 9A.44.120(1). In determining the reliability of out-of-court declarations, the trial court is to examine:

"(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness."

*Ryan*, at 175-76 (quoting *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982)). The court is also to consider:

(1) the statement contains no express assertion about past fact, (2) cross examination could not show the declarant's lack of knowledge, (3) the possibility of the declarant's faulty recollection is remote, and (4) the circumstances surrounding the statement . . . are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

*Ryan*, at 176 (citing *Dutton v. Evans*, 400 U.S. 74, 88-89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970)).

■ The trial court is in the best position to make the determination of reliability as it is the only court to see the child and the other witnesses. *State v. Swanson*, 62 Wn. App. 186, 191 n.1, 813 P.2d 614, *review denied*, 118 Wn.2d 1002 (1991). Whether statements are admissible pursuant to the child abuse hearsay exception is within the sound discretion of the trial court and will not be reversed absent a showing of manifest abuse of discretion. *State v. Justiniano*, 48 Wn. App. 572, 579, 740 P.2d 872 (1987).

Here, the court considered that T.T. had no motive to lie and more than one person heard the statements. The court noted T.T.'s general character was good and there was a great deal of similarity between the statements she made to different family members. The court noted there was no reason to suppose T.T. misrepresented Mr. Pham's involve-

ment. It considered the timing of the declarations and the absence of any indication T.T. disliked Mr. Pham before the incident.

The court discussed, in turn, each of T.T.'s statements about the incident to family members. The disclosures were spontaneous. The time, content and circumstances of the statements provided sufficient indicia of reliability.

Mr. Pham argues that because there was no corroboration, the statements were not reliable. We disagree. T.T. was competent to testify. If a child victim is available to testify as a witness, corroboration of the out-of-court statements is not a prerequisite to their admissibility. RCW 9A.44.120; *State v. Bishop*, 63 Wn. App. 15, 20, 816 P.2d 738 (1991), *review denied*, 118 Wn.2d 1015 (1992). The court did not err in ruling T.T.'s hearsay statements were admissible.

### USE OF UNCERTIFIED INTERPRETER

Next, Mr. Pham asserts the court erred in allowing an uncertified interpreter to translate T.T.'s trial testimony when Mr. Williams, a certified interpreter, was available. He argues RCW 2.43.030 expressly protects the constitutional due process rights of the accused and therefore the court erred in protecting T.T.'s interests.

■ As a preliminary matter, we address the State's contention that Mr. Pham may not challenge the court's ruling because he did not preserve the error by objecting at trial. Defense counsel told the court he had no problems with Mr. Williams' interpretations and would "prefer to stick with the certified interpreter". When advised by the court that T.T. would be allowed a female interpreter, counsel stated, "If the Court is leaving us no choice but to have a different interpreter, . . . my objection has been made known . . .". Mr. Pham preserved the issue for appeal; the basis of the objection is apparent and we therefore review the assignment of error. *See State v. Pittman*, 54 Wn. App. 58, 66, 772 P.2d 516 (1989) (evidentiary ruling will be examined on appeal if the specific basis for the objection is apparent from the record).

When a non-English-speaking person is a party to a legal proceeding, or is subpoenaed to appear at a legal proceeding, "the appointing authority shall use the services of only those language interpreters who have been certified by the office of the administrator for the courts, unless good cause is found and noted on the record by the appointing authority." RCW 2.43.030(1)(b). Good cause includes a determination that:

> (i) Given the totality of the circumstances, including the nature of the proceeding and the potential penalty or consequences involved, the services of a certified interpreter are not reasonably available to the appointing authority; or

> (ii) The current list of certified interpreters maintained by the office of the administrator for the courts does not include an interpreter certified in the language spoken by the non-English-speaking person.

RCW 2.43.030(1)(b)(i), (ii).

▪ The statute's determination of what constitutes good cause, however, is not exclusive. Given the nature of the proceedings, T.T.'s speech impediment and the cultural difficulties T.T. experienced, the court did not err in finding good cause.

Mr. Pham does not suggest Ms. Lamb was incapable, biased or otherwise unable to properly interpret T.T.'s trial testimony. Nor does he allege prejudice. Ms. Lamb had served as Mr. Pham's interpreter and was associated with the defense. Mr. Pham can hardly be heard to argue that Ms. Lamb was incompetent. Moreover, the court retained Mr. Williams to ensure Ms. Lamb's interpretation was accurate.

▪ We are not persuaded by Mr. Pham's argument that he had a constitutional right to a *certified* interpreter. *People v. Carreon*, 151 Cal. App. 3d 559, 198 Cal. Rptr. 843 (1984). In *People v. Estrada*, 176 Cal. App. 3d 410, 415, 221 Cal. Rptr. 922, 924 (1986), *review denied* (May 8, 1986), the court recognized a defendant's constitutional right to an interpreter means a competent interpreter, not necessarily a certified interpreter. Mr. Pham had a competent interpreter. There is no error.

634

Finally, at oral argument Mr. Pham asserted for the first time on appeal that he was denied his Sixth Amendment right to counsel because he could not communicate with his attorney when Ms. Lamb was assisting the court in interpreting T.T.'s testimony.

On May 3, 1994, this court remanded the matter to the trial court for a determination of whether Mr. Pham had access to an interpreter when Ms. Lamb was assisting the court in interpreting T.T.'s testimony. On July 20, the court entered findings of fact and conclusions of law to the effect that Mr. Pham had access to an interpreter throughout the proceedings and particularly during the testimony of T.T. and that the interpreter was appropriately utilized.

Mr. Pham's convictions are affirmed.

THOMPSON, C.J., and SCHULTHEIS, J., concur.

Review denied at 126 Wn.2d 1002 (1995).