[No. 38526-7-I.　Division One.　February 17, 1998.]

THE STATE OF WASHINGTON, *on the Relation of Alexander E. Hendrix, Respondent,* v. MICHAEL ANTHONY WATERS, *Appellant.*

---

[39]RCW 2.06.040.

*David P. Butler,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *June I. Tomioka, Deputy,* for respondent.

*Dianna A. Fasano,* pro se.

WEBSTER, J. — Michael Waters appeals the trial court's parentage judgment and order because it conditioned his

visitation rights to his son upon ceasing his daily, daylong marijuana use. Because Waters claims he uses marijuana as part of his Rastafarian religious practices, he asserts that the trial court's decision, in the absence of showing any actual or potential harm to his child's best interests, violates his right to free religious exercise.

Because we find the First Amendment does not excuse Mr. Waters from complying with Washington's marijuana prohibition, the trial court appropriately considered the illegal nature of Waters's marijuana use in relation to his son's general welfare. Thus, its decision was neither unreasonable nor untenable. We affirm.

## FACTS

In October 1995, trial was held to determine parentage, visitation, and child support of Alexander Hendrix (Alex). Michael Waters and Dianna Fasano are Alex's biological parents. At trial, the court heard testimony from Waters, his domestic partner, Fasano, and the guardian ad litem (GAL). But because the GAL failed to timely deliver a copy of her report to Waters, it was not admitted at trial. Instead, the GAL testified as an expert and Waters did not object.

As part of her testimony, the GAL discussed the steps she took to obtain information about both Ms. Fasano and Mr. Waters for her recommendation to the court. The GAL visited Ms. Fasano's home in response to Mr. Waters's accusation that her home was dirty, but she did not visit Waters's home. The record indicates that the GAL had difficulties obtaining information from Mr. Waters and his attorney, but she did contact references provided by Waters. Based upon her investigation, the GAL recommended a drug use evaluation for Mr. Waters, and recommended restricted, supervised visitation between Waters and Alex.

Waters's trial testimony focused largely upon his marijuana use. In particular, he openly testified regarding the extent of his use and his religious reasons for doing so. He

also described his religious beliefs and the tenets of Rastafarianism. He admitted that marijuana use is not a required religious practice, but simply encouraged. The court expressed concern with Waters's daily marijuana use because, "[f]or whatever the motivation there is in utilizing it, it is illegal . . . ."

At the close of the testimony, the court found that both Waters and Fasano have a history of substance abuse. Ms. Fasano satisfactorily completed drug rehabilitation, so the court found her to be "clean, sober and capable." On the other hand, the court found no evidence to confirm Waters's testimony that he has abstained from using cocaine and alcohol. The court also found that Waters presently used marijuana on a daily and daylong basis as part of his Rastafarian religion and that he committed acts of domestic violence in the past. Finding these issues of concern to Alex's welfare, the court placed conditions upon Mr. Waters's drug use that, if followed, would improve his access to Alex. Waters's progress towards meeting these conditions—which included 30 days of drug-free urine samples by December 31, 1995—was to be evaluated at a review hearing.

The review hearing was held in April, 1996. Waters renewed his objections to the court's restrictions on his religious marijuana use. The court responded:

> Your visitation with your child has not been restricted because of your religious beliefs or your lifestyle . . . . The reason that your relationship has been restricted is because, up until this point and at the trial, you maintained the right to have the daily consumption of marijuana.

When the hearing concluded, the court entered its final judgment and order establishing parentage. This appeal was brought after the court awarded full custody to Ms. Fasano and restricted Mr. Waters's visitation rights until he stopped using marijuana.

## DISCUSSION

Free Exercise

■ The First Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, restricts a state's interference with an individual's free religious exercise. It states in relevant part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."[1] Article I, section 11 of the Washington Constitution provides greater protection to the religious freedoms enjoyed by Washington's citizens than does the First Amendment.[2] But Waters makes no convincing argument why, under these facts and in this context, we should undertake an independent state constitutional analysis.[3] Therefore, we apply factually analogous federal case law in deciding Waters's appeal.

In *Employment Division, Department of Human Resources of Oregon v. Smith*,[4] the United States Supreme Court considered whether an Oregon law criminalizing peyote use violated the free exercise of members of the Native American Church because they lost their unemployment benefits after using peyote. Finding no constitutional violation, the Court refused to hold "that when otherwise prohibitable conduct is accompanied by religious convictions, not only the convictions but the conduct itself must

---

[1] U.S. Const. amend. I.

[2] *See In re Marriage of Jensen-Branch*, 78 Wn. App. 482, 491, 899 P.2d 803 (1995) (citing *First Covenant Church v. City of Seattle*, 120 Wn.2d 203, 226, 840 P.2d 174 (1992)).

[3] *See Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 115, 937 P.2d 154, 943 P.2d 1358 (1997) (citing *State v. Russell*, 125 Wn.2d 24, 57, 882 P.2d 747 (1994); *State v. Reece*, 110 Wn.2d 766, 777-78, 757 P.2d 947 (1988)) ("Even where a state constitutional provision has been subject to independent interpretation and found to be more protective in a particular context, it does not follow that greater protection is provided in all contexts."), *cert. denied*, 118 S. Ct. 856 (1998).

[4] 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990).

be free from governmental regulation.''[5] In response, Congress enacted the Religious Freedom Restoration Act (RFRA), superseding *Smith* and imposing strict scrutiny where laws substantially burden religious exercise. But on June 25, 1997, the United States Supreme Court declared the RFRA unconstitutional.[6] In *City of Boerne v. C.F. Flores*,[7] the Court held that in enacting the RFRA, Congress exceeded the scope of its enforcement power under section 5 of the Fourteenth Amendment. It discussed *Smith* at length, characterizing its holding: ''neutral, generally applicable laws may be applied to religious practices even when not supported by a compelling governmental interest.''[8] Consequently, the Court's precedent, not the RFRA, controls.[9]

▮ Decisions involving child custody and visitation are soundly within the trial court's discretion. Thus, the appellate court reviews such decisions for abuse of discretion.[10] Although a trial court has wide latitude in deciding parenting issues, it must make its decisions based upon a child's best interests and without abusing its discretion.[11]

▮ Waters contends that *In re the Marriage of Jensen-Branch*[12] and *In re the Marriage of Hadeen*[13] require the trial court to first show actual or potential harm to his

---

[5]*Id.* at 882.

[6]*See City of Boerne v. C.F. Flores*, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997). In light of the RFRA's unconstitutionality, we do not address Waters's RFRA claims.

[7]521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997).

[8]117 S. Ct. at 2161.

[9]117 S. Ct. at 2172. Waters filed his brief before the Supreme Court decided *Flores*. But neither he nor the State submitted supplemental briefing regarding *Flores*. Neither did Waters address its affect on this appeal at oral argument.

[10]*See In re Marriage of Jensen-Branch*, 78 Wn. App. 482, 490, 899 P.2d 803 (1995) (citing *Munoz v. Munoz*, 79 Wn.2d 810, 813-14, 489 P.2d 1133 (1971); *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993)).

[11]*See Munoz*, 79 Wn.2d at 813-14.

[12]78 Wn. App. 482, 899 P.2d 803 (1995).

[13]27 Wn. App. 566, 619 P.2d 374 (1980).

child before restricting his visitation rights based upon his religious marijuana use. But Waters does not complain that Washington's marijuana prohibition is invalid.[14] Neither does he argue that either this statute or the court's discretion to consider illegal substance abuse is other than religiously neutral. Rather, like the party in *Smith*, Waters expects the court to "excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate."[15] The Supreme Court declined to take this position, as do we.

Neither do we find *Jensen-Branch*[16] or *Hadeen*[17] controlling. In *Jensen-Branch*, we recently addressed a parenting plan restricting one parent from providing religious education or indoctrination of the children to the exclusion of the other parent. Applying article I, section 11, we held that a trial court must ensure a reviewing court that it gave specific consideration to the religious rights affected by the trial court's order.[18] And in *Hadeen*, Mrs. Hadeen was a member of a fundamentalist Christian sect espousing paddling, isolation, and fasting as acceptable child discipline methods. The trial court awarded custody of four of the Hadeen's five daughters to Mr. Hadeen after interviewing three of the daughters and ordering psychiatric evaluations.[19] But we reversed, holding that religious practices may be considered in custody disputes only if there is a reasonable and substantial likelihood that the practices

---

[14]RCW 69.50.401 proscribes marijuana use. This statute has withstood constitutional scrutiny, and represents a valid exercise of the State's police power. *See State v. Smith*, 93 Wn.2d 329, 337, 610 P.2d 869 (1980).

[15]*Employment Div., Dep't of Human Resources v. Smith*, 494 U.S. 872, 878-79, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990).

[16]78 Wn. App. 482, 899 P.2d 803 (1995).

[17]27 Wn. App. 566, 619 P.2d 374 (1980).

[18]*Jensen-Branch*, 78 Wn. App. at 492.

[19]*Hadeen*, 27 Wn. App. at 568.

will cause the immediate or future impairment of a child's temporal health or physical safety.[20]

The critical distinction between the instant case and both *Jensen-Branch* and *Hadeen* is that the court did not have before it an illegal activity. Although we do not judge whether Mr. Waters's marijuana use was religiously sincere—for in *Smith* the Supreme Court noted that "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds,"[21]— given the illegal nature of Waters's marijuana use in relation to the trial court's discretion to determine visitation, we cannot find that the trial court's decision was patently unreasonable or untenable.

The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. *See* RCW 2.06.040; CAR 14.

KENNEDY, A.C.J., and COLEMAN, J., concur.

---

[20]*Id.* at 579.

[21]*Employment Div., Dep't of Human Resources v. Smith*, 494 U.S. 872, 887, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990) (citation omitted).