[No. 40063-1-I.   Division One.   June 29, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. JAIRO
GONZALES-MORALES, *Appellant*.

*James R. Dixon* and *Catherine E. Glinski* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Macduffie Setter, Deputy*, for respondent.

WEBSTER, J. — In Jairo Gonzales-Morales's trial for second degree assault, the court appointed an interpreter to facilitate Gonzales-Morales's communications with his attorney. When a Spanish-speaking witness for the State testified, the court "borrowed" Gonzales-Morales's court-appointed interpreter to translate the State's witness's testimony. If Gonzales-Morales wished to speak to his attorney during this time, he was to request a recess from the court. He did not do so, and the jury returned a guilty verdict.

On appeal, Gonzales-Morales alleges this use of his interpreter violated both his Sixth Amendment right to counsel and the appearance of fairness doctrine. This is an issue of first impression in Washington. But many courts have considered the constitutional contours of this issue and found no error; we concur. Also, because Gonzales-Morales offers no evidence of the trial court's actual or potential bias, we do not apply the appearance of fairness doctrine. Consequently, we affirm.

FACTS

Jairo Gonzales-Morales was charged with two counts of second degree assault in violation of RCW 9A.36.021(1)(c).

For his jury trial, the court provided Gonzales-Morales with an interpreter. The interpreter was seated at the defense table throughout trial, available to facilitate communication between Gonzales-Morales and his attorney.

Testifying for the State were four witnesses: (1) Edward Serrano, a victim for one assault count; (2) Tony Serrano, Edward's son and the victim for the other count; (3) the responding police officer; and (4) Pablo Serrano, Edward Serrano's nephew. Pablo witnessed and participated in the events giving rise to the assault charges, but Gonzales-Morales was not charged for any actions alleged against Pablo. All of the witnesses, except Pablo Serrano, testified in English; Pablo testified in Spanish.

Apparently unable to obtain a second interpreter to translate Pablo's testimony for the court, jury, and counsel, the trial court decided to "borrow" Gonzales-Morales's interpreter for that purpose:

> I am going to allow the interpreter to remain there at the defense table and she can interpret [the prosecutor's] question, which she would be doing anyway, and can interpret the answer in [English] for the court. The defendant will be able to understand the answer himself anyway because he speaks the same language as the witness.
>
> . . .
>
> [The interpreter] should stay there at the defense table and if the defendant has any question to ask counsel, then he can just let us know and we'll interrupt the questions and answers being given so that he can communicate freely and thoroughly with his attorney.

2 Verbatim Report of Proceedings ("VRP") 2-3.

Consequently, during Pablo's testimony, Gonzales-Morales's interpreter served the dual role of interpreting for both the court and the defense;[1] no second interpreter was appointed.

---

[1]Some jurisdictions recognize three distinct interpreting roles for court translators: proceedings, witness, and interview or defense interpreting. Proceedings interpreters simultaneously translate the judicial proceedings for the defend-

At the close of the evidence and outside the jury's presence, defense counsel objected on the record regarding the interpreter arrangement. In particular, she expressed concern about the defendant's ability to ask questions of his counsel while the interpreter was translating for the State's witness. The trial court added:

> Well, I think I should note for the record I observed the defendant, there wasn't any time that he made any indication that he wanted to ask you any questions. And as I told the interpreter, if that were to happen, she could certainly interpret and take care of that. So it should reflect there were no questions by your client during her interpretation of the State's witness.

*Id.* at 68.

The jury found Gonzales-Morales guilty on both counts. He was sentenced within the standard range and timely appealed.

## DISCUSSION

Sixth Amendment Right to Counsel

The right to an interpreter is derived from the constitutional right to confront witnesses and to a fair trial. *See State v. Woo Won Choi*, 55 Wn. App. 895, 901, 781 P.2d 505 (1989). It is also Washington's policy to secure and protect the constitutional rights of hearing-impaired, speech-impaired, and non-English speaking persons by having qualified interpreters available to assist them during legal proceedings. *See* RCW 2.42.010, RCW 2.43.010. Gonzales-Morales challenges neither the court's determination that

ant, usually sitting at the defendant's side. Witness interpreters translate non-English testimony for the judge, jury, and counsel, preserving this testimony "on the record" in English. Witness interpreters usually consecutively translate testimony. And an interview or defense interpreter facilitates attorney-client communications immediately before, during, and immediately after judicial proceedings. *See* Charles M. Grabau & Llewellyn Joseph Gibbons, *Protecting the Rights of Linguistic Minorities: Challenges to Court Interpretation*, 30 NEW ENG. L. REV. 227, 245-46 (1996). Here, while translating Pablo Serrano's testimony, Gonzales-Morales's interpreter served both the witness and defense interpreter roles, simultaneously.

he needed an interpreter, the appointed interpreter's qualifications, nor the content of the interpreter's translations. Instead, he asserts that the court violated his Sixth Amendment right to assistance of counsel when the court "borrowed" his interpreter to translate Pablo Serrano's testimony.[2] While this is an issue of first impression in Washington,[3] several other courts have addressed this issue and concluded that a criminal defendant is not deprived of his constitutional rights under similar circumstances.

In *State v. Avila*, 797 P.2d 804 (Colo. Ct. App. 1990), for example, the court acknowledged that lack of an interpreter may impair a defendant's constitutional right to effective representation, but found no such violation. As here, there the court interpreter sat at the defense table and translated the entire proceedings, but was borrowed to translate for two Spanish-speaking witnesses. Avila argued that he was entitled to a personal interpreter for those times when the court borrowed the interpreter. But the court noted that

---

[2]There is some debate between the parties whether a *Gunwall* analysis is required here. *See State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986). A *Gunwall* analysis is required for this court to undertake an independent state constitutional analysis of Gonzales-Morales's arguments. *See State ex rel. Hendrix v. Waters*, 89 Wn. App. 921, 925 n.3, 951 P.2d 317 (1998). But because Gonzales-Morales does not argue Washington provides any independent grounds for deciding the issues presented, his failure to present a *Gunwall* analysis is inconsequential. Consequently, we do not independently evaluate these issues under Washington's constitution.

[3]The parties confuse the effect of *State v. Pham*, 75 Wn. App. 626, 879 P.2d 321 (1994), on appeal. The entirety of the court's opinion regarding Pham's Sixth Amendment right to counsel argument is as follows:

Finally, at oral argument Mr. Pham asserted for the first time on appeal that he was denied his Sixth Amendment right to counsel because he could not communicate with his attorney when Ms. Lamb was assisting the court in interpreting T.T.'s testimony. On May 3, 1994, this court remanded the matter to the trial court for a determination of whether Mr. Pham had access to an interpreter when Ms. Lamb was assisting the court in interpreting T.T.'s testimony. On July 20, the court entered findings of fact and conclusions of law to the effect that Mr. Pham had access to an interpreter throughout the proceedings and particularly during the testimony of T.T. and that the interpreter was appropriately utilized.

*Id.* at 634. From this language, it is impossible to tell in what way Mr. Pham had *access* to *an* interpreter. It may have been similar to the facts presented here, or the court may have appointed an additional interpreter. Consequently, we do not apply *Pham* in reaching our decision here.

mere absence of a personal interpreter does not compel a conclusion that a defendant's rights have been denied. *Id.* at 806. It then found the court's procedures adequate. *Id.* (citing *United States v. Lim*, 794 F.2d 469 (9th Cir.) (where defendants communicated when they wished by notes or recess, no violation of the Court Interpreters Act in denying continuous interpretation when court borrowed defense interpreter), *cert. denied*, 479 U.S. 937, 107 S. Ct. 416, 93 L. Ed. 2d 367 (1986)).

Similarly, in *Castellon v. Whitley*, 739 F. Supp. 526 (D. Nev. 1990), *aff'd*, 976 F.2d 736 (9th Cir. 1992), *cert. denied sub nom., Castellon v. Hatcher*, 507 U.S. 1052, 113 S. Ct. 1947, 123 L. Ed. 2d 653 (1993), the Ninth Circuit Court of Appeals found no Sixth Amendment violation in requiring four defendants to share one interpreter at the defense table. *Id.* at 528. As in this case, the court there was willing to grant a recess, upon request, for counsel and the defendants to confer. And on one occasion, the court borrowed the defense interpreter to translate a State's witness's testimony. *Id.* at 527. Analyzing *United States v. Lim* and *United States v. Bennett*, 848 F.2d 1134 (11th Cir. 1988), the court found that requiring the defendants to use a single interpreter, in these circumstances, did not impair attorney-client communications. *Id.*

In *Bennett*, also a multiple defendant case, the Eleventh Circuit Court of Appeals rejected the defendants' arguments that they were entitled to individual interpreters to facilitate attorney consultation. Where the court offered to recess at the defendants' request, the court properly balanced the defendants' " 'constitutional rights to confrontation and due process against the public's interest in the economical administration of criminal law.' " 848 F.2d at 1141 (quoting *United States v. Martinez*, 616 F.2d 185, 188 (5th Cir. 1980), *cert. denied*, 450 U.S. 994, 101 S. Ct. 1694, 68 L. Ed. 2d 193 (1981)). *See also, e.g., United States ex rel. Navarro v. Johnson*, 365 F. Supp. 676, 683 (E.D. Pa. 1973) (in dicta, recognizing single interpreter's possibility of hampering Sixth Amendment rights, but noting not at is-

sue where judge permitted defendant to interrupt proceedings to confer with counsel, and defendant didn't do so); *People v. Tomas*, 136 Ill. App. 3d 1054, 484 N.E.2d 341, 91 Ill. Dec. 782 (1985) (no violation of rights to be present at and participate in trial where two defendants shared one interpreter, court borrowed interpreter to translate trial proceedings, interpreter remained seated beside defendants, and defendants could interrupt proceedings to use the interpreter to communicate with their attorney; declining to follow California cases), *cert. denied*, 475 U.S. 1067, 106 S. Ct. 1382, 89 L. Ed. 2d 607 (1986); *Martinez Chavez v. State*, 534 N.E.2d 731, 737 (Ind. 1989) (finding no violation of the defendant's right to counsel where the trial court did not appoint a defense interpreter in addition to the proceedings interpreter for the purpose of facilitating attorney-client communications at trial, and where defendant was able to communicate with his counsel during recesses); *People v. Marrero*, 156 A.D.2d 141, 548 N.Y.S.2d 188 (1989) (no Sixth Amendment violation in denying defendant's request for second interpreter, where interpreter remained at defense table while being borrowed to translate witness testimony); *but see State v. Dam*, 111 Or. App. 15, 825 P.2d 286, 288 n.1 (1992) (finding no prejudice where defense interpreter translated for State's witness, but noting "[t]he better practice would be to have one interpreter to work with the defendant and his counsel and a different one to translate for witnesses."); *State v. Kounelis*, 258 N.J. Super. 420, 609 A.2d 1310 (App. Div. 1992) (court violated defendant's Sixth Amendment rights in failing to appoint an interpreter for defense, but limiting holding to judge's discretion to consider defendant's need for an additional interpreter, the number of non-English speaking defendants, and other particular circumstances).

Gonzales-Morales responds that the Constitution guarantees an opportunity for *continual* attorney consultation during trial. He cites *State v. Hartzog*, 96 Wn.2d 383, 635 P.2d 694 (1981), in support. Although the *Hartzog* Court noted that a defendant's Sixth Amendment consultation right includes an "opportunity for private and continual

discussions between defendant and his attorney during the trial," *id*. at 402, we distinguish *Hartzog* on its facts. There, the Court was concerned with a courtroom security order that prevented the defendants from sitting at counsel table and required that confidential, attorney-client matters be discussed only in the courthouse hallway or the county jail, depending on the length of the conference. *Id*. at 401-02.[4] But here, the only barrier to the free flow of information between Gonzales-Morales and his attorney was within Gonzales-Morales's control; he simply needed to request a recess.

This procedural option, however, raises Gonzales-Morales's other argument; requiring him to request a recess to confer with his attorney may chill a defendant's exercise of his right to effective counsel. Supporting this contention, he cites *State v. Carreon*, 151 Cal. App. 3d 559, 198 Cal. Rptr. 843 (1984), where this was one of many reasons the court found supported requiring a second interpreter in factually similar circumstances. But the critical distinction between *Carreon* and this case is that *Carreon* was decided in the context of California's state constitutional right to an interpreter "throughout the proceedings." Cal. Const. art. I, § 14.[5] And although such a chilling effect is an important consideration, other safeguards insulate attorney-client communications facilitated

---

[4]The *Hartzog* Court cited *Geders v. United States*, 425 U.S. 80, 89-90, 96 S. Ct. 1330, 1336, 47 L. Ed. 2d 592 (1976), which has since been expounded by *Perry v. Leeke*, 488 U.S. 272, 109 S. Ct. 594, 102 L. Ed. 2d 624 (1989). There, the Court found no Sixth Amendment violation in denying the defendant the right to consult with his attorney during a recess held between the defendant's direct and cross-examination. 488 U.S. at 284-85. That case largely rested on a concern that permitting consultation would impair the truth-finding component of trial proceedings. But it is a "short recess" exception to an otherwise blanket declaration by Gonzales-Morales that only *continual* consultation can satisfy the Sixth Amendment. *See also United States v. Miguel*, 111 F.3d 666, 673 (9th Cir. 1997) (distinguishing between no access to counsel and a mere delay in communication with counsel and noting "any delay in communication between counsel is more properly viewed as an interference with the right of cross-examination than as a denial of the assistance of counsel.").

[5]Washington uses similar "throughout the proceedings" language in its statute providing for interpreters. *See* RCW 2.43.030(1). But despite Gonzales-Morales's arguments to the contrary, such a statutory provision does not necessarily confer the same rights that a constitutional provision might.

by an interpreter. *See, e.g.,* RCW 2.43.030(2)(b) (requiring interpreters to abide by ethical code); GR 11.1(e) (prohibiting interpreters from disclosing attorney-client privileged communications); *see also State v. Aquino-Cervantes,* 88 Wn. App. 699, 945 P.2d 767 (1997) (interpreter is "agent" to extent that cannot be called to witness against defendant regarding content of attorney-client privileged communications or such communications would be chilled).

█ In conclusion, we are mindful of the serious constitutional dimensions surrounding a non-English speaking criminal defendant's right to have meaningful access to counsel. Considering the case law and its similarities to the critical facts in this case, however, we find Gonzales-Morales was not denied his Sixth Amendment right to counsel.

## Appearance of Fairness Doctrine

██ Gonzales-Morales next challenges the court's procedure of borrowing the interpreter as a violation of the appearance of fairness doctrine. In *State v. Post,* 118 Wn.2d 596, 826 P.2d 172, 837 P.2d 599 (1992), our Supreme Court "reformulated" the hurdle required to be cleared before the appearance of fairness doctrine may be applied: evidence of a judge's actual or potential bias. *Id.* at 619 n.8. In that case, since the defendant offered no evidence demonstrating his sentencing judge was actually or potentially biased against him, the court found the appearance of fairness claim without merit. *Id.*

Despite Gonzales-Morales's arguments to the contrary, this court acknowledged this reformulation, "which now requires evidence of a judge's actual or potential bias to assert a claim under the appearance of fairness doctrine." *In re Dependency of O.J.,* 88 Wn. App. 690, 697 n.9, 947 P.2d 252 (1997). And Gonzales-Morales offers no evidence supporting a showing of the judge's actual or potential bias in borrowing the interpreter solely for the purpose of translating Pablo Serrano's testimony. Under these circumstances,

Gonzales-Morales has failed to meet the required threshold; his appearance of fairness claim is without merit.[6]

Affirmed.

COLEMAN and BAKER, JJ., concur.

Review granted at 137 Wn.2d 1008 (1999).

---

[6]Gonzales-Morales also alludes to a separate due process argument when he cites *State v. Sain*, 34 Wn. App. 553, 558, 663 P.2d 493 (1983). But because we need not consider "naked castings into the constitutional sea," *see State v. Linden*, 89 Wn. App. 184, 197, 947 P.2d 1284 (1997) (quoting *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)), we need not undertake such an inquiry. Even if we considered this argument, we would distinguish *Sain*. That case did not involve interpreters, but the defendant's access to counsel in order to insure adequate preparation and consultation before trial. Here there is no argument that Gonzales-Morales's attorney was not prepared for trial. And the court provided an opportunity for Gonzales-Morales to consult with his attorney at any time during Pablo Serrano's testimony, upon request, in order to ensure adequate consultation.