SABERS, Justice
(concurring specially).
[¶ 57.] The issue is not whether the trial court abused its discretion in appointing an interpreter for the Defendant, but whether the trial court abused its discretion in forcing the Defendant to share his interpreter with the State.
[¶ 58.] I agree with the majority opinion that the trial court abused its discretion by failing to make a record “to support the trial court’s dismissal of the second interpreter.” Supra ¶ 32. The key question is whether confidential communications between Defendant and his attorney had occurred prior to the “forced sharing” of Defendant’s interpreter and whether that “forced sharing” resulted in prejudice to Defendant’s case. Because the record is void of any showing of actual prejudice in that respect, I join in the affirmance of these convictions.
ZINTER, Justice
(concurring specially).
[¶ 59.] I concur and write to include some clarifying points relating to Selalla’s entitlement to two interpreters. I also write to discuss the standard of review concerning the trial court’s failure to require simultaneous interpreting of the preliminary jury instructions.

*819
Two Interpreters

[¶ 60.] First, in my view, the nature of Selalla’s case for interpretive services has been mischaracterized. Notwithstanding the other writings, the record does not support the special concurrence’s characterization that this is the type of ease in which the court “forced sharing” of Selal-la’s interpreter in order to assist the court. See supra ¶ 58. Nor does the record support the dissent’s characterization that this is the type of case in which the trial judge “commandeer[ed],” “borrowed,” “confiscate[d],” “seize[d]” and “appropriated” Sel-alla’s interpreter to “work for the court.” See infra ¶¶ 73-74, 76, 80, n. 20. Those types of cases involve a trial court’s actual use of a defendant’s interpreter to simultaneously interpret for the defendant and the court, jury, or other participant in the trial. See State v. Gonzales-Morales, 91 Wash.App. 420, 422, n. 1, 958 P.2d 339, 340 (1998) (explaining that because the trial court was unable to find a second interpreter, it “borrowed” defendant’s interpreter to simultaneously interpret a Spanish-speaking witness for the prosecutor, jury, and other courtroom participants while also facilitating communication between defendant and his counsel).[9]
[¶ 61.] This is a case in which Selalla’s public defender arranged for one publicly financed interpreter on his own. In addition, for reasons not explained in the record, the circuit court administrator also arranged to have yet another interpreter present. It appears that Judge Lieberman was not aware of these arrangements because when both interpreters appeared that first morning of trial, he conducted an off-the-record discussion with counsel. Following that discussion, he made a determination on the record expressly finding that “the only person in this courtroom who will need an interpreter is the defendant.” Thereafter, for the first time, Selalla’s trial counsel indicated that he would like both interpreters: an “official interpreter” for the trial and a “personal interpreter” in case Selalla had any questions during the trial or during breaks. Because both interpreters were publicly financed, this is a case where defense counsel ásked the trial court to appoint a personal interpreter in addition to a trial interpreter.[10] Selalla did not, however, make any factual showing suggesting the need for two such interpreters because of any language difficulty.
[¶ 62.] The court determined that because Selalla was the only person in the courtroom in need of an interpreter, there was no need for two interpreters.[11] The *820 court ordered Selalla’s interpreter to remain to assist Selalla and his attorney, and the second interpreter was excused. There is no dispute that thereafter, Selal-la’s interpreter was not actually used by the court (“borrowed”) to interpret for the court, jury, any witness, or for anyone other than Selalla.[12] Because the record does not reflect that Selalla’s interpreter was ever used to simultaneously interpret for the court and for the defendant, and because it appears that Selalla’s own interpreter remained continuously available throughout the trial for Selalla and his counsel, this is not a borrowing or commandeering case.
[¶ 63.] Furthermore, even if this were a “borrowing” case, the court utilized the appropriate procedure to ensure that Sel-alla’s constitutional rights were protected. See Gonzales-Morales, 91 Wash.App. at 424-27, 958 P.2d at 341-42 (collecting cases that have approved similar protec *821 tive procedures). The Gonzales-Morales court noted with approval that although that trial court borrowed the defendant’s interpreter to interpret a state witness, it also made the necessary accommodations for the defendant to consult and communicate with his attorney. The trial court in Gonzales-Morales informed the defendant:
I am going to allow the interpreter to remain there at the defense table and she can interpret [the prosecutor’s] question, which she would be doing anyway, and can interpret the answer in Spanish for the court. The defendant will be able to understand the answer himself anyway because he speaks the same language as the witness....
[The interpreter] should stay there at the defense table and if the defendant has any question to ask counsel, then he can just let us know and we’ll interrupt the questions and answers being given so that he can communicate freely and thoroughly with his attorney.
Id. at 422, 958 P.2d at 340. Gonzales-Morales concluded that there was no constitutional violation in light of the case law and this protective procedure. The court did so even though it was “mindful of the serious constitutional dimensions surrounding a non-English speaking criminal defendant’s right to have meaningful access to counsel.” Id. at 428, 958 P.2d at 343.
[¶ 64.] In Selalla’s case, the trial court employed the same protective procedure even though this interpreter was not borrowed to simultaneously interpret for the defense and for the court. The court informed Selalla and counsel:
[T]here is only one person in the courtroom [Selalla] who needed an interpreter, and if at any point during the trial you feel inhibited, in any way whatsoever, I will work with you and take a recess.... We have interpreters so that as the witnesses are testifying, your client will be interpreted to and if you need to visit with your client, just state that to me because you can’t listen to the witnesses, and your client can’t listen to the witnesses while talking. If you need to visit, just state that to me and I’ll be glad to stop the testimony and give you an opportunity to do that.
Under the overwhelming weight of authority, this procedure sufficiently protected Selalla’s constitutional rights to confrontation, counsel, and due process even if the trial court had borrowed his interpreter. See Gonzales-Morales and its collected authorities, 91 Wash.App. at 428, 958 P.2d at 343 (citing six federal and four state court decisions affirming use of a single interpreter over claims of entitlement to two interpreters as long as an opportunity for recess and consultation were provided).
[¶ 65.] Nevertheless, Selalla’s trial and appellate counsel have asserted that a non-English speaking defendant is entitled to two interpreters as a matter of law: one to interpret for the defendant and one to facilitate communication between the defendant and counsel. With the possible exception of two cases that are not relevant here, this asserted right to two interpreters is not supported by any case cited by Selalla or the dissent. It is also unsupported generally. See infra ¶ 67. Because Selalla’s interpreter was not borrowed or commandeered, and because Selalla made no factual showing of need for two interpreters, it is my view that the trial court did not abuse its discretion in limiting Selalla to one publicly financed interpreter.
[¶ 66.] I also disagree with the dissent’s premise that Selalla’s level of understanding the English language is “irrelevant in the context of this case and should be no part of our analysis.” Infra ¶ 74. On the contrary, the right to an interpret *822 er does not simply hinge on a request: it is dependent upon a showing of an actual language disability. United States v. Arthurs, 73 F.3d 444, 447 (1st Cir.1996). Although many of the federal cases have been decided in the context of the federal statutory right to an interpreter, the point at which the need arises is the same.
Yet how high must the language barrier rise before a defendant has a right to an interpreter? It is well settled that there is no right to an interpreter if the foreign-born defendant speaks fluent English and is “completely aware of all the proceedings”. Cervantes v. Cox, 350 F.2d 855 (10th Cir.1965). The status of the right becomes less certain, however, where, as in the present case, the defendant has some ability to understand and communicate, but clearly has difficulty.
Because the determination is likely to hinge upon various factors, including the complexity of the issues and testimony presented during trial and the language ability of the defendant’s counsel, considerations of judicial economy would dictate that the trial court, coming into direct contact with the defendant, be granted wide discretion in determining whether an interpreter is necessary. See Perovich v. United States, 205 U.S. 86, 91, 27 S.Ct. 456, 51 L.Ed. 722 (1907); United States v. Barrios, 457 F.2d 680 (9th Cir.1972); United States v. Sosa, 379 F.2d 525, 527 (7th Cir.1967), cert. denied, 389 U.S. 845, 88 S.Ct. 94, 19 L.Ed.2d 111 (1967). It would be a fruitless and frustrating exercise for the appellate court to have to infer language difficulty from every faltering, repetitious bit of testimony in the record. But precisely because the trial court is entrusted with discretion, it should make unmistakably clear to a defendant who may have a language difficulty that he has a right to a court-appointed interpreter if the court determines that one is needed, and, whenever put on notice that there may be some significant language difficulty, the court should make such a determination of need.
United States v. Carrion, 488 F.2d 12, 14-15 (1st Cir.1973) (emphasis added). Ultimately:
[bjecause the determination is likely to hinge upon various factors, including the complexity of the issues and testimony presented during trial and the language ability of the defendant’s counsel, considerations of judicial economy would dictate that the trial court, coming into direct contact with the defendant, be granted wide discretion in determining whether an interpreter is necessary.
Id. (citing Perovich, 205 U.S. at 91, 27 S.Ct. 456, 51 L.Ed. 722; Barrios, 457 F.2d 680; Sosa, 379 F.2d 525, 527).
[¶ 67.] In today’s case, there is no dispute that Selalla needed some level of interpretive services, and one publicly financed interpreter was provided. There is also no dispute that trial counsel did not put the court on notice that Selalla was having any language difficulty that required two interpreters.[13] Because Selalla *823 did not make any showing of need, his appellate argument is in essence that interpretation of witnesses and communication with counsel requires two interpreters as a matter of law. As was previously mentioned, however, the overwhelming consensus of authority does not support that claim. See Gonzales-Morales, 91 Wash.App. at 428, 958 P.2d at 343 (collecting cases). See also Carrion, 488 F.2d at 15 (noting that the court must be put on notice of some significant language difficulty, and that protective procedures are sufficient to satisfy constitutional requirements).
[¶ 68.] In summary, Selalla failed to make any showing that his interpreter was borrowed by the court. Even if his interpreter was borrowed at any point in the trial, the court employed the appropriate protective procedure. Moreover, Selalla did not show that the trial court’s ruling rendered him unable to understand the proceedings, unable to communicate with counsel, unable to assist in his defense, or unable to cross-examine the witnesses. Finally, Selalla has failed to show that a defendant in his circumstances has a legal right to two interpreters. Therefore, his claim fails both factually and as a matter of law.

Structural Error not Applicable and Plain Error not Established

[¶ 69.] I finally disagree with the dissent’s assertion that the failure to interpret the preliminary jury instructions at the time they were first read to the jury resulted in structural error. See infra ¶ 81. As previously noted, these questions involving interpreters are fact sensitive, discretionary matters for the trial court. Supra ¶ 66; United States v. Khehra, 396 F.3d 1027, 1030 (8th Cir.2005); Luna v. Black, 772 F.2d 448, 451 (8th Cir.1985) (citing United States v. Carrion, 488 F.2d at 14-15); State v. Hernandez, 120 Idaho 785, 820 P.2d 380, 382 (App.1991). Because these decisions are discretionary and involve complex factual situations that differ in every trial setting, structural error analysis is ill-fitted to appellate review.
[¶ 70.] Indeed, rather than applying structural error analysis, this issue is reviewed for plain error, which requires a showing of prejudice. See United States ex rel. Negron v. State of New York, 310 F.Supp. 1304, 1308 (D.C.N.Y.1970) (applying prejudice/harmless error analysis to the alleged deprivation of the right to an interpreter); Arthurs, 73 F.3d at 447 (concluding that in applying plain error analysis: “From what we can ascertain, we cannot say that his language problems were of such a magnitude as to have deprived him of a fair trial.”) (citing United States v. Olano, 507 U.S. 725, 736-37, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993)); United States v. Taylor, 54 F.3d 967, 972-73 (1st Cir.1995) (discussing “raise-or-waive” rule and exception for plain error); State v. Saldana, 310 Minn. 249, 252, 246 N.W.2d 37, 39 (“The test ... is whether the failure to appoint an interpreter hampered the accused in the presentation of his defense.”); State v. Perez, 404 N.W.2d 834, 838 (Minn.App.1987). (citing test in Saldana). Plain error ■ analysis is more appropriate in this type of case because:
[t]he absence of an objection on this ground . left the district court without notice of any claim that language diffi *824 culties bothered defendant to the extent now claimed on appeal. Had the court been so notified, it could have made further inquiry and, if necessary, taken steps to deal with the alleged problem. We cannot say, on the basis of the record now before us, that the court committed any error, much less one that “seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.”
Arthurs, supra, 73 F.3d at 447 (citing United States v. Olano, 507 U.S. 725, 736, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508).
[¶ 71.] Selalla cannot, however, establish plain error because he makes no showing of prejudice; i.e., that he was denied the interpretive services necessary to understand and effectively use the pretrial instructions. He simply asserts error as a matter of law.[14] Under these circumstances, where there has been no showing of an actual denial of effective or meaningful participation in the trial, plain error is not established, and Selalla waived the right to object to this issue. See Gonzalez v. People of Virgin Islands, 109 F.2d 215, 217 (3rd Cir.1940); People v. Ramos, 26 N.Y.2d 272, 274, 258 N.E.2d 197, 198, 309 N.Y.S.2d 906, 908 (1970).
[¶ 72.] The dissent’s reliance on State v. Calderon, 270 Kan. 241, 13 P.3d 871 (Kan.2000) is misplaced. In that case, without consulting counsel or stating a reason, the trial judge instructed the interpreter to not interpret the closing arguments. 270 Kan. at 246, 13 P.3d at 875. At that point in the trial, the court’s decision effectively denied the defendant of any meaningful opportunity to participate in closing argument. Thus, Calderon involved the complete denial of interpretation in a critical part of the trial, and therefore, that court understandably applied structural error analysis. In this case, however, the question only involves the impact that a delay in interpretation of preliminary instructions may have had, and there was no showing that any delay at this preliminary stage denied Selalla the opportunity to participate in the trial or communicate with counsel. Because Selal-la’s claims are factual in nature, Calderon does not support structural error analysis.

. The Washington Court of Appeals described the "borrowing” situation as follows:
In Jairo Gonzales-Morales's trial for second degree assault, the court appointed an interpreter to facilitate Gonzales-Morales’s communications with his attorney. When a Spanish-speaking witness for the State testified, the court "borrowed” Gonzales-Morales's court-appointed interpreter to translate the State’s witness's testimony. If Gonzales-Morales wished to speak to ■ his attorney during this time, he was to request a recess from the court.
Gonzales-Morales, 91 Wash.App. at 421, 958 P.2d at 339.

. The dissent disputes this point on the semantic argument that defense counsel did not ask the trial court to "appoint” both interpreters, noting that “defense counsel’s interpreter was hired under the public defender’s separate budget, not the court’s budget.” See infra ¶ 75. This technicality does not, however, change the fact that defense counsel asked to have two publicly financed interpreters. More fundamentally, the extent of the constitutional right to publicly financed interpretive services is not dependent on the public budget from which the interpreter is paid.

.The dissent suggests that the trial court dismissed the second interpreter for economic reasons, see infra ¶ 73. The dissent also suggests that without two interpreters, trial counsel was unable to communicate with his *820 client. See infra ¶ 73 (stating that after the court removed the second interpreter, defense counsel responded that without both interpreters he could not communicate with his client). Neither suggestion is correct. The transcript, when viewed in context, reveals that the second interpreter was dismissed and economics were mentioned because there was no showing of need. The transcript further reflects that defense counsel’s concerns about client communication were hypothetical, but in any event, they were resolved, without objection, by the court's protective procedures.
The entire transcript on these issues is terse, but it reflects that the court's decision to deny two interpreters was based on need, and therefore, there was no reason to pay for two interpreters. The court raised this matter as the very first order of business, and began the discussion only mentioning need:
We have had discussions off the record as to the fact that there are two interpreters here. I have determined that the only person in this courtroom who will need an interpreter is the defendant; therefore the Court does not see any reason for two interpreters.
After the off-record hearing and ruling, the court provided defense counsel an opportunity to make a record. In making a record, defense counsel did not make any showing of need for two interpreters. Instead, defense counsel explained that his general practice in some “other cases” was to use two interpreters. Counsel argued:
[A ]s I have done in other cases involving the need for an interpreter where I — where we wanted an interpreter for a person that doesn’t speak English fluently, I have hired Daya Thorin, who is here [today], just to interpret for my client should he have any questions during the trial as frequently happens or during breaks while the jury is outside the courtroom here and just to have a way of speaking with my client during trial.
Counsel then noted that the other interpreter was also present that morning as a result of the court administrator, and counsel continued:
[A]s I said I have done in cases in the past, [the one interpreter] is here under the Court’s direction through Court administration to interpret from the witnesses, from the Court, from the attorneys; and [the other interpreter] is here, more as a personal interpreter so my client and I can communicate because otherwise we can’t.
The trial court then responded that it would provide accommodations so Selalla's publicly financed interpreter could interpret and facilitate communications between Selalla and counsel. The court informed Selalla that if he felt uncomfortable, that it would take a recess. It also told trial counsel that if he needed to visit with Selalla during a witness’s testimony, to inform the court, and that the court would stop the testimony so counsel could visit with Selalla. Following this offer, trial counsel did not object to the court's ruling or accommodation. Most importantly, thereafter, counsel never indicated to the court that the court’s ruling or accommodation was causing a language difficulty for counsel or Selalla. In sum, the dissent is incorrect in suggesting that the second interpreter was dismissed solely because of economics and that without the second interpreter, counsel was unable to communicate with Selalla.

. The trial transcript does not indicate that any Spanish speaking witness testified, which would require the assistance of an interpreter for the court, counsel, or the jury.

. The dissent suggests defense counsel should not have to justify why it was necessary to have a personal interpreter for his client. Infra ¶ 75. That is not, however, the issue. The issue in this case is the need for two interpreters, and as is explained in ¶ 66, supra, the court must be put on notice of that alleged need. Therefore, if there was an actual (as opposed to hypothetical) need for two interpreters in this case, trial counsel had an obligation to make that showing.
The dissent excuses the absence of a showing suggesting that the trial judge made his decision before defense counsel had an opportunity to make a showing. Infra ¶ 73 (stating that defense counsel was allowed by the judge to make a record after the judge announced his decision). The record, however, reflects *823 that the issue was argued in chambers, out of the presence of the jury, off the record, and following that discussion, the judge went on the record allowing counsel to make a showing. If an actual need had been demonstrated in the off-the-record discussion, it was counsel's obligation to replicate that showing on the record. Counsel failed to do so, and without an adequate showing, two interpreters cannot be justified.

. The dissent suggests that “hearing and understanding the preliminary instructions would have assisted the defendant in alerting his counsel to matters that could have assisted him in establishing reasonable doubt.” Infra ¶ 84. There is, however, no evidence to suggest that this contingency occurred.
The dissent also emphasizes that the failure to orally read jury instructions is reversible error. Infra ¶ 84, n. 22 (citing State v. Nelson, 1998 SD 124, ¶ 20, 587 N.W.2d 439, 447). The dissent fails to note that Nelson only applied this rule to the final jury instructions. Nelson expressly acknowledges the statute providing that preliminary instructions need not even be given: it is a matter of discretion. Nelson, 1998 SD 124, ¶ 9, 587 N.W.2d at 443-44 (citing SDCL 15-6-51(a)).