Filed 5/6/22  P. v. Petronzi CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079422 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FWV18003963) |
| DRAKE GIRARD PETRONZI, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino, Bridgid M. McCann, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Melissa Mandel, Assistant Attorney General, Robin Urbanski and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

Defendant Drake Girard Petronzi, Jr. was charged with one count of felony child abuse (Pen. Code, § 273a, subd. (a))[1] for causing or permitting injury to his severely malnourished three-month-old daughter. Prior to trial, a doubt was declared concerning the defendant's competence to stand trial. The court held a competency hearing and found he was competent. The case proceeded to trial and the jury found the defendant guilty of the charged offense. It also returned a true finding on a special circumstance allegation that he personally inflicted great bodily injury on a child under the age of five years (§ 12022.7, subd. (d)).

After the verdict was rendered, but before sentencing, a doubt was again declared as to the defendant's competence. The court held a second competency hearing and the defendant was again found competent. Thereafter, the court sentenced the defendant to state prison for a term of 11 years consisting of six years for the child abuse conviction and five years for the great bodily injury enhancement.

On appeal, the defendant claims the trial court committed instructional error during the second competency proceeding. He argues the court should have instructed the jury to determine whether he was competent at the time of his trial, which occurred eight months earlier; however, it erroneously instructed the jury to determine his present competence at the time of the second competency proceeding. The defendant also contends substantial evidence did not support the competence verdict rendered in the second competency proceeding. We reject both of these arguments and affirm the judgment.

---

[1] Undesignated statutory references are to the Penal Code.

2

## II

## BACKGROUND

### A

*Factual Background*

San Bernardino County deputy sheriffs responded to a call at a residence in Rancho Cucamonga. The defendant, his girlfriend A.J., and their three-month-old daughter Jane Doe lived in a travel trailer parked in the driveway of the residence. Both the defendant and A.J. were caregivers for Doe.

When the deputies arrived, it was extremely hot in the trailer and the defendant was holding Doe in a wet towel that smelled of urine. Doe was visibly underweight and her head and face were discolored. The deputies sought medical assistance and Doe was transported to the hospital.

Doe was hospitalized for severe malnutrition and suspected child abuse. She had very little subcutaneous fat and weighed just seven pounds two ounces. She suffered from diffused osteopenia (loss of bone mass), prolonged hypoglycemia, low protein and albumen levels, a low infection-fighting blood cell count, and anemia—all of which were indicative of malnutrition. She also suffered from oral thrush and widespread candidal infection around her diaper area, buttocks, neck, and ears. A forensic pediatrician who treated Doe testified her condition was one of the worst cases of malnutrition she had seen in her career.

At the defendant's trial, A.J. testified that the defendant understood Doe was "real skinny" and "needed to put on some weight." However, neither the defendant nor A.J. took Doe to a doctor. A.J. testified that the defendant wanted Doe to gain weight before she was taken to a doctor because "it looked bad."

A.J. testified that the defendant sometimes fed Doe alcohol to calm her. She testified that he blew marijuana smoke in Doe's face as well. The defendant reportedly stated marijuana smoke was "good for [Doe] and everybody has it in their DNA."

B

*Procedural Background*

The defendant was charged by information with one count of felony child abuse and it was alleged that he personally inflicted great bodily injury on a child under the age of five. He was also held to answer in a separate criminal proceeding (Case No. FWV19000963; hereafter, the trailing case) for charges of willful infliction of corporal injury (§ 273.5, subd. (a)) and failure to appear for a hearing (§ 12022.1).

On May 3, 2019, the court held a pretrial hearing. At the hearing, the defendant's appointed counsel, deputy public defender Tony Costanzo, declared a doubt concerning the defendant's competence to stand trial. He did not elaborate on the reasons for his declaration of doubt. The court did not disclose the basis for the declaration of doubt either. It stated, in full, as follows: "Under [section] 1368, based on the representations by Mr. Costanzo, I'm going to order criminal proceedings be suspended as to all matters, again under [section] 1368. I am going to order the appointment of a psychologist to provide the Court with a [section] 1368 evaluation."

Dr. Robert Sawicky, the court-appointed psychologist, interviewed the defendant in jail, reviewed his mental health file, and prepared an evaluation. The defendant reported no mental health treatment history, but admitted to a protracted history of abusing substances including methamphetamine. He reported suffering from post-traumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), depression,

4

and anxiety. Dr. Sawicky observed that the defendant's thought process was "not always totally linear, but the content of his verbal productions [was] consistently lucid and relevant." He opined the defendant was "aware of the pending charges" against him, the district attorney's filing of a criminal complaint, and the consequences of a conviction. He opined the defendant's "thought content [was] reality based and free of delusions," he was "capable of cooperating with his attorney in formulating a possible defense," and he was capable of effectively testifying on his own behalf. Although Dr. Sawicky found the defendant was "significantly anxious/depressed," he concluded the defendant was competent to stand trial.

On June 14, 2019, the court held a competency hearing and both parties submitted on Dr. Sawicky's evaluation. Based on the evaluation and the parties' submissions thereon, the court found the defendant was competent and criminal proceedings were reinstated.

On September 18, 2020, the defendant's trial began. The jury found the defendant guilty of the charged offense on September 23, 2020. It also returned a true finding on the personal infliction of great bodily injury enhancement.

On November 13, 2020, the court held a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. At the *Marsden* hearing, the defendant sought to have Costanzo relieved as his counsel. He voiced several concerns about Costanzo's performance, arguing among other things that Costanzo failed to adequately highlight his "mental health issues." In response, Costanzo stated he was initially "concerned about [the defendant's] ability to comprehend" and, for that reason, he declared a doubt about the defendant's competence at the May 3, 2019 pretrial hearing. Costanzo also stated he pursued mental health diversion for the defendant, but the expert deemed

5

the defendant ineligible. Costanzo added that he met with the defendant "many, many times" after the court's first competence determination and he "believed [they] established a rapport so that . . . he underst[ood] what [Costanzo was] talking about, and [Costanzo] underst[ood] what [the defendant was] talking about."

While voicing other unrelated concerns regarding Costanzo's performance, the defendant made statements that were sometimes incomprehensible and, at other times, troubling. For instance, he stated he felt "fricken trapped" and would "rather be dead almost." He stated he wanted a microphone to be removed from his tooth and a camera to be removed from his eye. Additionally, he complained he was being "beat up and tortured and set up for a crime [he] didn't commit." On the record, the court noted that the defendant was trying to pull out his hair during the hearing. It also stated that the defendant was pointing at his mouth and his eye during the hearing.

On its own motion, the court declared a doubt as to the defendant's competence and suspended the criminal proceedings. The court stated the verdict in the upcoming competency proceeding would apply to both of the defendant's criminal proceedings–the present child abuse case as well as the trailing case, which had not yet gone to trial. Further, the court clarified that the relevant question, for purposes of the child abuse case, was "not whether or not [the defendant was] competent to stand trial; [it was] whether [the defendant was] competent to know the nature of the proceedings [as they went] forward." The People demanded a jury trial for the competency proceeding.

The trial court appointed three medical experts to evaluate the defendant—Dr. Fazlollah Aldavoud, Dr. Teresa Fisher, and Dr. Nashira

6

Funn.  All three experts evaluated him and testified at the second competency proceeding that took place on May 17, 18, and 19, 2021.

Dr. Aldavoud is a clinical psychologist who works for the Department of Corrections and Rehabilitation.  He interviewed the defendant in jail on February 5, 2021 for approximately one hour.  According to Dr. Aldavoud, the defendant reported suffering from ADHD and PTSD.  He also reported a history of abusing substances including methamphetamine.

Dr. Aldavoud testified the defendant was communicative and cooperative during the jail interview, but he exhibited signs of persecutory paranoia and delusion.  For instance, he repeatedly pointed at his teeth and told Dr. Aldavoud a camera or microchip had been implanted in his teeth.  At times, he looked behind him to check whether anyone was listening in on the interview.  Further, he stated he saw vampires and claimed "the cops" broke his leg.  According to Dr. Aldavoud, the defendant was on psychotropic medication at the time of his evaluation.

Dr. Aldavoud had a "working diagnosis" that the defendant suffered from an affective disorder or mood disorder with psychotic features.  He did not believe the defendant could understand the court proceedings or assist his counsel due to his disorganized thinking and paranoia.  He noted the defendant gave unresponsive answers when asked to define the term plea bargain.  For these reasons, Dr. Aldavoud concluded the defendant was not competent.  Dr. Aldavoud opined the defendant would benefit from a long-term residential drug program for individuals with dual mental illness and substance abuse diagnoses.

Dr. Fisher is a clinical psychologist who works in a state prison.  She interviewed the defendant in jail on April 2, 2021.  The defendant reported he had been diagnosed with attention deficit disorder (ADD), ADHD, a learning

7

disability, schizophrenia, and PTSD.  He also reported using substances including methamphetamine and heroin.  According to Dr. Fisher, the defendant took psychotropic medication.

Dr. Fisher testified the defendant was "easily able to understand" the questions she asked him and did not seem to have problems with memory or speech.  She testified his speech sometimes wandered off-topic, but she was able to redirect him.  According to Dr. Fisher, the defendant reported that he was being watched or monitored, vampires were bothering him, and a camera was implanted in his eye.  However, she did not believe he suffered from a formal delusional disorder.  She testified a person with a delusional disorder usually has "one story and everything fits into that story."  However, the defendant's concerns did not "quite fit" with one another.  Further, she believed the defendant might be malingering, or exaggerating his symptoms, to seem more mentally ill than he was.  She believed he might be malingering because he brought up specific diagnoses and tried to "advance his own idea about how ill he was," rather than answering her questions.

Dr. Fisher administered a 14-point competency assessment on the defendant.  For each area covered in the assessment, she assigned the defendant one of three ratings:  competent; borderline incompetent; or clearly incompetent.  Dr. Fisher considered the assessment results holistically and weighed all of the defendant's responses to her questions in order to reach her overall determination on the defendant's competence.

Dr. Fisher found the defendant was competent in 11 areas: understanding of the charges; appreciation of the penalties; appraisal of available defenses; motivation to help himself in the legal process; planning of legal strategies; ability to cooperate rationally with counsel; capacity to disclose pertinent information to counsel; capacity to testify; capacity to

challenge prosecution witnesses; ability to manifest appropriate courtroom behavior; and ability to cope with the stress of incarceration awaiting trial. In her evaluation, she noted the defendant was "very clear about the charges against him," knew he was assigned an attorney, was "aware of the possible penalties," and had a "good memory for what happened on the day he was arrested."

Dr. Fisher found the defendant was borderline incompetent in three areas: appraisal of functions of courtroom participants; understanding of court procedures; and appraisal of likely outcome. She found he was borderline incompetent in these areas because he believed "everyone was against him," he gave nonresponsive answers to certain of her questions, and he believed "they'll probably just find [him] guilty and murder [him]." She attributed the findings of borderline incompetence to the defendant's lack of effort or interest in discussing particular topics, not a lack of knowledge about those topics.

Dr. Fisher's overall assessment was that the defendant was competent. In her evaluation, she summarized her assessment as follows: "Mr. Petronzi **is trial competent** at this time. Although he exhibits symptoms of mental illness, he also is very able to articulate his current situation, and has a working knowledge of the court and its processes. He likes to discuss his own issues, but can be re-directed to the task at hand, although this may have to happen frequently."

Dr. Funn is the program manager for the San Bernardino County Department of Behavioral Health. She interviewed the defendant in jail on December 28, 2020 for approximately 30–45 minutes. The defendant did not report previous diagnoses or hospitalizations. However, he reported he used

methamphetamine for 12 years and consumed pruno (i.e., fermented fruit and bread) in jail.

Dr. Funn testified the defendant exhibited symptoms of paranoia or delusion. In particular, he told her that "people were out to get him" and he had a device implanted in his tooth. However, Dr. Funn testified the paranoia and delusions did not affect the defendant's ability to participate in the interview because she was able to redirect him. She attributed his paranoia and delusions to methamphetamine use and possibly pruno use.

Dr. Funn testified the defendant was able to understand the nature of the criminal proceedings. She believed he exhibited an understanding of the criminal charges pending against him, the facts giving rise to the charges, the difference between a district attorney and a defense attorney, the meaning of a plea bargain, the consequences of a guilty verdict, and the defenses available to him. Based on the defendant's ability to interact with her, his ability to present facts about the case, and his stated willingness to assist his attorney, Dr. Funn opined the defendant would be able to assist his counsel in a rational manner. For all these reasons, Dr. Funn determined the defendant was competent.

After the expert witnesses testified, the jury deliberated and returned a verdict finding the defendant competent. Thereafter, the court reinstated the criminal proceedings, denied the still-pending *Marsden* request, and sentenced the defendant to 11 years in state prison.

### III

### DISCUSSION

The defendant challenges the judgment of conviction on two grounds. First, he argues the trial court committed instructional error during the second competency proceeding. Second, he asserts the second finding of

10

competence was not supported by substantial evidence.  For reasons we will explain, we reject both of these arguments.

A

*The Trial Court Did Not Commit Instructional Error*

During the second competency proceeding, the court instructed the jury with CALCRIM No. 3451 (captioned "Present Mental Competence of Defendant").  It required the jury to determine "whether the defendant *is* mentally competent to stand trial." (Italics added.)  Elsewhere, it stated that the law presumes a defendant is mentally competent and, to overcome the presumption of competence, the defendant must prove "it is more likely than not that the defendant *is now* mentally incompetent . . . ." (Italics added.)

The defendant claims the trial court erred insofar as it instructed the jury to decide his present competence.  He asserts the "salient inquiry" is, or should have been, his past competence as of the date of his trial, which took place eight months earlier.  We reject this argument, which misconstrues the trial record and the scope of the due process prohibition against trying and convicting an incompetent person.

"The due process clause of the federal Constitution's Fourteenth Amendment prohibits trying a criminal defendant who is mentally incompetent.  [Citations.]  A defendant is deemed competent to stand trial only if he ' "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" ' and ' "has a rational as well as factual understanding of the proceedings against him." ' [Citation.]  [¶] When a trial court is presented with evidence that raises a reasonable doubt about a defendant's mental competence to stand trial, federal due process principles require that trial proceedings be suspended and a hearing be held to determine the defendant's competence." (*People v. Ary* (2011) 51 Cal.4th

11

510, 517.) In California, a hearing to determine a defendant's competence must be conducted in accordance with the procedures set forth in section 1369.

"If, after a competency hearing, the defendant is found competent to stand trial, a trial court may rely on that finding unless the court ' "is presented with a substantial change of circumstances or with new evidence" casting a serious doubt on the validity of that finding.' " (*People v. Rodas* (2018) 6 Cal.5th 219, 231.) " 'More is required than just bizarre actions or statements by the defendant to raise a doubt of competency' [citation], or 'counsel's unparticularized assertion that defendant's condition had deteriorated, with no explanation of how it had done so' [citation]." (*People v. Buenrostro* (2018) 6 Cal.5th 367, 409–410.)

Here, the trial court ordered a competency hearing prior to trial and found the defendant was competent. That determination has not been challenged on appeal. Then, after the jury returned its verdict of guilt, the court declared a doubt as to the defendant's competence and scheduled a second competency proceeding.

The record reflects that the court declared a doubt and ordered the second competency proceeding for two limited purposes: first, to assess whether the defendant was competent to proceed to sentencing in the present case; and second, to assess whether he was competent to stand trial in the trailing case. The court made this abundantly clear, stating on that record that the relevant issue to be addressed at the competency proceeding would not be whether the defendant was "competent to stand trial [in the present case]; [it would be] whether [the defendant was] competent to know the nature of the proceedings as [they went] forward."

We agree with the trial court's assessment. To determine whether the defendant could proceed to sentencing in the present case, or stand trial in the trailing case, the proper inquiry was whether the defendant was *presently* competent—not whether he was competent at some point in the past. (See *People v. Young* (2005) 34 Cal.4th 1149, 1216 ["The United States Supreme Court has defined competence to stand trial as a defendant's ' " ' "sufficient *present* ability to consult with his lawyer with a reasonable degree of rational understanding" ' and ' "a rational as well as factual understanding of the proceedings against him." ' " ' "], italics added; accord § 1368, subd. (c) ["when an order for a hearing into the *present* mental competence of the defendant has been issued, all proceedings in the criminal prosecution shall be suspended until the question of the *present* mental competence of the defendant has been determined"], italics added; § 1369, subd. (c) [in a competency proceeding, "[t]he prosecution shall present its case regarding the issue of the defendant's *present* mental competence"], italics added.)

Nothing in the record suggests the court ordered the second competency proceeding based on any doubt concerning the defendant's past competence. Further, the defendant has not argued that the court was presented with a substantial change of circumstances or new evidence casting a serious doubt on the validity of its pretrial finding of competence. Because the court ordered the second competency proceeding solely to assess the defendant's competence to continue proceedings in this case, as well as his competence to begin trial in the trailing case—inquiries that both turned on the defendant's present competence—the court did not err when it instructed the jury to assess the defendant's present competence as of the date of the second competency proceeding.

13

At times in his appellate briefs, the defendant appears to suggest the due process competency right applies only prior to the rendering of a verdict of guilt; thus, any doubt as to his competence necessarily concerned, or should have concerned, his competence at the time of trial. For instance, he claims the "fundamental statutory and constitutional concern is whether the defendant is or was competent *at the time of their trial.*" (Italics added.) Further, he contends that any determination of his competence after the rendering of the verdict was "moot." To the extent we have accurately summarized the defendant's argument, the defendant is mistaken.

" '[T]he competency right does not end at a conviction,' but rather persists through sentencing." (*U.S. v. Dreyer* (9th Cir. 2013) 705 F.3d 951, 961; see *U.S. v. Ahrendt* (1st Cir. 2009) 560 F.3d 69, 74 ["The obligation to determine competency to stand trial is continuing, and persists throughout a proceeding including through the sentencing phase."]; *U.S. v. Pellerito* (1st Cir. 1989) 878 F.2d 1535, 1545 ["Surely, the sentencing process necessitates that the defendant possess both a 'present ability to consult with [a] lawyer with a reasonable degree of rational understanding,' and a 'rational as well as factual understanding of the proceedings.' "].) It extends through sentencing because " '[s]entencing is a critical stage of the criminal process,' [citations], and the defendant's allocution, 'is an essential element of a criminal defense.' " (*Dreyer*, at p. 961; see *People v. Gutierrez* (1986) 177 Cal.App.3d 92, 100 ["Sentencing is a critical phase in a criminal proceeding."].)

Because due process prohibits an incompetent person from being sentenced—not merely tried during the guilt phase of a trial—we cannot conclude that the trial court's declaration of doubt necessarily concerned the defendant's past competence at the time of his trial. Rather, as the trial court made clear, the declaration of doubt pertained solely to the defendant's

14

present competence to proceed to sentencing in the case at hand, and to proceed to trial in the trailing case. Because the defendant's present competence was the sole issue to be decided in the second competency proceeding, the trial court's instructions were correct.

B

*The Competency Verdict was Supported by Substantial Evidence*

The defendant claims substantial evidence did not support the jury's finding that he was competent. We disagree.

When a party challenges a finding of competence, the reviewing court applies "a deferential substantial evidence standard of review on appeal. 'In reviewing a jury's determination that a defendant is competent to proceed to trial, we give due deference to the trier of fact, and therefore view the record in the light most favorable to the verdict.' " (*People v. Mendoza* (2016) 62 Cal.4th 856, 871 (*Mendoza*); *People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1514 (*Kirvin*) ["We review a trial court's determination of competency for substantial evidence, viewing the evidence in the light most favorable to that determination."].) " 'Evidence is substantial if it is reasonable, credible and of solid value.' " (*People v. Turner* (2004) 34 Cal.4th 406, 425.)

Applying this deferential standard of review to the present case, we conclude there was substantial evidence to support the jury's finding of competence. Three court-appointed psychologists interviewed the defendant, prepared psychological evaluations of him, and testified at the second competency proceeding. Two of those court-appointed psychologists— Dr. Fisher and Dr. Funn—concluded the defendant was competent.

Both Dr. Fisher and Dr. Funn rendered testimony upon which a reasonable trier of fact could find that the defendant understood the nature of the criminal proceedings pending against him. Dr. Fisher opined the

15

defendant was "very clear about the charges against him," knew he was assigned an attorney, was "aware of the possible penalties," and had a "good memory for what happened on the day he was arrested." Similarly, Dr. Funn testified the defendant appeared to understand the criminal charges against him, the facts giving rise to the charges, the difference between a district attorney and a defense attorney, the meaning of a plea bargain, the consequences of a guilty verdict, and his available defenses.

Dr. Fisher and Dr. Funn also rendered testimony upon which a rational jury could find that the defendant was able to assist his counsel. After administering a 14-point assessment on the defendant, Dr. Fisher concluded the defendant was "competent" in numerous areas including, of relevance here, his ability to appraise available defenses, help himself in the legal process, plan legal strategies, cooperate rationally with counsel, and disclose pertinent information to counsel. While acknowledging the defendant's speech sometimes wandered off-topic, Dr. Fisher concluded he could "easily be re-directed" to the topic at hand. Like Dr. Fisher, Dr. Funn concluded the defendant could rationally assist defense counsel. She based this determination on her firsthand interactions with the defendant and the defendant's own statement that he would assist his counsel.

The evaluations and testimony of Dr. Fisher and Dr. Funn constituted ample evidence to support the jury's finding of competence. (*People v. Lawley* (2002) 27 Cal.4th 102, 135 [expert report, even in the absence of testimony, supported competence finding]; *People v. Stanley* (1995) 10 Cal.4th 764, 811–812 [competency evidence from two medical experts deemed sufficient].)

The defendant asserts substantial evidence did not support the jury's finding of competence because he made certain statements to the court-appointed psychologists suggesting that he was unaware trial had already

16

occurred. In particular, he emphasizes that he told Dr. Fisher, "they'll probably just find me guilty and murder me." According to the defendant, this statement (and other statements that the defendant has not identified) showed he harbored a "manifest [mis]understanding that his trial was yet ahead of him . . . ."

For at least two reasons, defendant's argument does not persuade us. For one thing, the court ordered competency proceedings to assess the defendant's competency in two separate proceedings—the present case and the trailing case, which had not yet gone to trial at the time the psychologists' interviews took place. It is reasonable to infer the defendant's statements about an upcoming trial or guilty verdict concerned the trailing case, not the present case. The defendant has given us no reason to believe otherwise.

Moreover, Dr. Fisher acknowledged that the statement upon which the defendant's argument is based ("they'll probably just find me guilty and murder me") caused her to rate him as borderline incompetent in one of the areas she assessed—appraisal of likely outcomes. Despite his poor performance in this area (and two other areas), she nonetheless diagnosed him as competent *overall* given his apparent understanding of many other aspects of the legal system. Further, she believed the defendant's lack of effort—not lack of knowledge—was the true reason he scored borderline incompetent in any areas at all. For both of these reasons, the defendant's mere reference to a future trial or verdict does not mean that the finding of competence was unsupported by substantial evidence.

The defendant also challenges the finding of competence on grounds that the jury received evidence from which it could have found that he was incompetent. Relying principally on the testimony of Dr. Aldavoud, he

17

argues the jury heard evidence that he suffered from a mental health condition and his ability to communicate with counsel was impaired.

The defendant effectively asks us to reweigh the evidence, reassess witness credibility, and substitute our own finding for that of the jury. We decline his request, which misinterprets our function as an appellate court. "It is 'not the role of this court to redetermine the credibility of experts or to reweigh the relative strength of their conclusions.' " (*Kirvin, supra,* 231 Cal.App.4th at p. 1514.) Rather, our role is to determine whether substantial evidence, controverted or uncontroverted, supports the finding that was actually rendered by the trier of fact. (*Mendoza, supra,* 62 Cal.4th at p. 883 ["We must emphasize that it is not our function to substitute our judgment for that of the jury or to reweigh the evidence. Rather, we are required to 'view the record in the light most favorable to the verdict.' "].) For all the reasons discussed above, we conclude the evidence, viewed in the light most favorable to the verdict, was sufficient to support the jury's finding of competence.

IV

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

DATO, J.